[No. B049999. Second Dist., Div. Five. July 12, 1991.]

STANLEY WALSH et al., Cross-complainants and Appellants, v.
FRANCIS CAIDIN et al., Cross-defendants and Respondents.

**COUNSEL**

Schafler & Solomon, Norman L. Schafler and Phillip E. Solomon for Cross-complainants and Appellants.

Hufstedler, Kaus & Beardsley, Peter O. Israel and David Drexler for Cross-defendants and Respondents.

## OPINION

ASHBY, J.—Stanley Walsh, M.D., and Southwestern Corporation Medical Group, a corporation, appeal from the dismissal of their cross-complaint for spoliation of evidence following the sustaining of a demurrer without leave to amend.

Appellants are defendants in an action for wrongful death arising from alleged medical malpractice. The wrongful death complaint was filed by respondent Francis Caidin, surviving spouse of decedent Stanley R. Caidin. The wrongful death complaint alleged that prior to his death on July 16, 1989, decedent was under the care of appellants (and other health care providers who are not parties to this appeal). It alleged that decedent died as a proximate result of negligent treatment by appellants and others.

Appellants filed a cross-complaint against Francis Caidin and her attorney, respondent David Drexler, for "1. Spoliation of Evidence; 2. Conspiracy to Destroy Evidence; [and] 3. Interference with Prospective Economic Advantage." Appellants alleged that the cremation of Stanley Caidin's body, despite a prior request by appellants for an autopsy, deprived appellants of evidence of the cause of death. Appellants claimed that respondents owed appellants a duty to preserve evidence and that respondents either intentionally or negligently destroyed critical evidence.

Respondents demurred to the cross-complaint, contending they had no duty toward appellants and that Mrs. Caidin as surviving spouse had sole authority over disposition of decedent's remains. (Health & Saf. Code, §§ 7100, 7102.) The trial court sustained respondents' demurrer without leave to amend.

We affirm. ■ The surviving spouse had sole authority over disposition of the remains. Appellants had no legal right to an autopsy for civil discovery purposes. Respondents owed no duty to appellants to preserve "evidence," because the law does not treat a human dead body as merely another form of physical evidence.[1]

---

[1]Appellants inappropriately attempt to supplement the cross-complaint with factual assertions in their opening brief on appeal. According to these assertions, the specific allegations against appellant Walsh involve his failure to earlier detect decedent's cancer; decedent suffered not only from cancer but also from other conditions which may have caused or contributed to death; the death certificate attributing death to cancer was signed by a nontreating physician; prior to death decedent, represented by respondent Drexler, filed a medical malpractice action; as decedent's condition deteriorated, appellant's attorney told

## DISCUSSION

By statute the surviving spouse has the right to control disposition of a decedent's remains. (See *Ross* v. *Forest Lawn Memorial Park* (1984) 153 Cal.App.3d 988, 993-994 [203 Cal.Rptr. 468, 42 A.L.R.4th 1049] [right to disposition includes right to freedom from interference with that right]; for historical development under common law see Note (1939) 12 So.Cal.L.Rev. 435-446.) Health and Safety Code section 7100 provides, "The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in, and the duty of interment and the liability for the reasonable cost of interment of such remains devolves upon the following in the order named:

"(a)   The surviving spouse. . . ."

The person charged by law with the duty of interment is entitled to custody of the remains for the purpose of interment. (Health & Saf. Code, § 7102.) Cremation is an authorized disposition. (Health & Saf. Code, §§ 7009, 7010.) The person having the right to custody may, but is not required to, authorize an autopsy. (Health & Saf. Code, § 7113.) However, in cases where the coroner is required by law to investigate the cause of death, the coroner has a paramount right to custody, including the right to conduct an autopsy, until the conclusion of the autopsy or medical investigation by the coroner. (Health & Saf. Code, § 7102; Gov. Code, §§ 27491, 27491.4.)

There is no indication the coroner investigated the death involved in this case. Appellants sought an autopsy for the sole purpose of discovery of evidence in a civil action. Appellants had no legal right to have an autopsy conducted for this purpose. In *Holm* v. *Superior Court* (1986) 187 Cal.App.3d 1241, 1248-1249 [232 Cal.Rptr. 432], the court held, "[T]he courts of this state have no legal authority, inherent or expressly conferred, to disturb the repose of the dead as an aid to civil litigants in their trial preparations." The appellate court found that neither the statutes relating to dead bodies nor the statutes relating to civil discovery authorize a court to order an autopsy for civil discovery purposes; the appellate court further concluded a court has no inherent authority to make such an order in the

Drexler that in the event of death before trial of the medical malpractice action, appellants wished to have an autopsy performed, and Drexler "agreed that such would be appropriate."

Even if we consider these additional details in determining whether the cross-complaint could be amended to state a cause of action, they do not change the result. The trial court properly sustained the demurrer without leave to amend because as a matter of law there is no reasonable possibility appellants could plead a valid cause of action. (See *Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117-1118 [222 Cal.Rptr. 239].)

absence of statute. (*Id.* at pp. 1245-1248; cf. Annot. (1952) 21 A.L.R.2d 538.) Appellants had no right to have an autopsy conducted and could not have obtained a court order for one.

This case is therefore distinguishable from the California "spoliation of evidence" case on which appellants rely, *Smith* v. *Superior Court* (1984) 151 Cal.App.3d 491 [198 Cal.Rptr. 829]. (See Annot. (1989) 70 A.L.R.4th 984.) In *Smith*, a tire flew off a van and crashed into the windshield of the plaintiff's vehicle, causing permanent injuries. A car dealer who had customized the van with special wheels agreed with the plaintiff's counsel to maintain certain automotive parts pending further investigation. The car dealer thereafter destroyed or lost the evidence, making it impossible for the plaintiff's experts to inspect and test those parts to determine the cause of the failure of the wheel assembly on the van. The complaint for spoliation of evidence alleged the car dealer knew or should have known that plaintiff would be induced to rely upon the promise by forbearing from seeking a temporary restraining order to compel maintenance of the evidence. (*Id.* at pp. 494-495.)

Here appellants' cross-complaint contains an extremely vague suggestion that respondent Drexler, as respondent Caidin's attorney, promised an autopsy to appellants' attorney. Appellants did not rely to their detriment on such alleged agreement because, unlike the plaintiff in *Smith*, appellants could not have obtained a court order for discovery of this type.

Respondents owed no duty to preserve evidence, because the law recognizes a human corpse is not just another piece of physical evidence. In *People* v. *Vick* (1970) 11 Cal.App.3d 1058, 1064 [90 Cal.Rptr. 236], the court stated, "There is a clear distinction between examination of physical evidence such as handwriting exemplars, fingerprints, written statements, and the body of a human being. The former are susceptible of examination without the likelihood of outrage to the emotional feelings of the living. As reflected in our laws, our society extends more respect to a dead body than to other physical evidence."

In *People* v. *McNeill* (1980) 112 Cal.App.3d 330 [169 Cal.Rptr. 313], the defendant was accused of murder. The victim died early the morning of December 22, and the coroner performed an autopsy the same day. "The victim's family was understandably in shock; they expressed a desire to complete the funeral before Christmas. In accord with their wishes, on the afternoon of December 22, after completion of the autopsy, the body was released by the coroner to a funeral home designated by the victim's family. . . . [¶] Funeral services were held for the victim in the early afternoon of December 23. Immediately thereafter the body was cremated." (*Id.* at pp.

336-337.) The criminal defendant argued that the coroner should have kept the body in cold storage or instructed the family not to cremate the body, so that the defendant could conduct an independent autopsy. After citing *People v. Vick, supra,* 11 Cal.App.3d 1058, the court rejected this argument. "Quite apart from its more ghoulish implications, defendant's criticism overlooks the fact that prosecutorial agencies have no right to custody of the remains of a deceased; therefore no duty of preservation arises. As noted in *Vick, supra,* Health and Safety Code section 7102 provides a right of custody in homicide cases to the coroner and not to any other person or official . . . . After the autopsy or investigation is completed by the coroner, the right to control disposition of the remains of a deceased and the duty of interment devolve on the family of the deceased (Health & Saf. Code, § 7100; *Vick, supra,* at p. 1065)." (*People v. McNeill, supra,* 112 Cal.App.3d at pp. 337-338.)

Appellants have even less interest in an autopsy than the criminal defendant in *McNeill* because appellants seek it merely for the purpose of civil discovery. (*Holm v. Superior Court, supra,* 187 Cal.App.3d at p. 1246.)

To allow the cause of action asserted by appellants would contravene the statutory scheme designating the persons having the right to dispose of human remains and the case law prohibiting court-ordered autopsies for civil discovery purposes. To allow appellants' action would treat a dead body merely as another piece of evidence, ignoring the outrage to the surviving family members, to which our case law is sensitive.

The trial court also opined that recognition of appellants' cause of action could violate the surviving spouse's freedom of religion. California law is also sensitive to this consideration. In *Sinai Temple v. Kaplan* (1976) 54 Cal.App.3d 1103, 1112 [127 Cal.Rptr. 80], the court said that a cemetery's "improper burial procedures which contravene the beliefs of the party who has the right to dispose of and inter the decedent" may constitute a tort. The Legislature has recognized the religious aspect by enacting Government Code section 27491.43. This statute permits a person, while living, to execute a written "certificate of religious belief" against autopsy, which will prevent that person's autopsy except in limited circumstances. (Goldberg, *Autopsy and Religious Belief* (Dec. 1985) 8 L.A.Law. 31.) The statute illustrates the Legislature's sensitivity to strongly held personal beliefs on this subject.

Because the surviving spouse's decision is so intensely private and personal, it would be difficult to prove that cremation was done for the improper purpose of destroying evidence. ■ Assuming, as we must on demurrer, that appellants could prove respondents had such motive,

appellants have another remedy. Appellants can ask the trier of fact in the wrongful death action to draw adverse inferences from such conduct. (Evid. Code, § 413; *Williamson* v. *Superior Court* (1978) 21 Cal.3d 829, 835, fn. 2 [148 Cal.Rptr. 39, 582 P.2d 126]; *Miller* v. *Montgomery County* (1985) 64 Md.App. 202 [494 A.2d 761, 768].) The opinion in the death certificate as to the cause of death may be rebutted by other evidence. (*Morris* v. *Noguchi* (1983) 141 Cal.App.3d 520, 523, fn. 1 [190 Cal.Rptr. 347].)

The order of dismissal of the cross-complaint is affirmed.

Turner, P. J., and Boren, J., concurred.