**Cindy FOLEY, Plaintiff/Appellant,**

v.

**ST. THOMAS HOSPITAL, William A. Shell, Jr., M.D., The Lipscomb Clinic, Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section.

April 5, 1995.

Permission to Appeal Denied by Supreme Court Aug. 21, 1995.

David Randolph Smith, David Randolph Smith & Associates, Nashville, Daniel D. Warlick, Warlick & Todd, Nashville, for appellant.

Mary Martin Schaffner, Howell & Fisher, Nashville, for appellee.

## OPINION

LEWIS, Judge.

This appeal is by plaintiff/appellant Cindy Foley[1] from the trial court's grant of defendants/appellees', St. Thomas Hospital, William A. Shell, Jr., M.D., and the Lipscomb Clinic, Motion for Summary Judgment and

---

resulting dismissal of her complaint. This case arose when plaintiff's husband, Donald Foley, died unexpectedly some twenty-two hours following elective hip replacement surgery.

On 12 September 1991 Dr. Shell performed hip replacement surgery at St. Thomas Hospital in Nashville on Donald Foley, who was thirty-five years old. While still a patient at St. Thomas Hospital on 14 September 1991, Mr. Foley suffered an unwitnessed catastrophic medical event between 12:30 a.m. and 2:00 a.m.. At 2:00 a.m. he was found unresponsive with labored respirations and had a blood pressure of 30/0. His pupils were dilated. At 3:00 a.m. on 14 September 1991 he was pronounced dead. No postmortem examination was performed nor was an autopsy requested by St. Thomas or any of the attending physicians. In his final note and discharge summary, Dr. Shell stated the "presumed" diagnosis was "a massive pulmonary embolus." A pulmonary embolism is an obstruction or occlusion of the "pulmonary arteries, most frequently caused by detached fragments of thrombus from a leg or pelvic vein, especially when thrombosis has followed an operation or confinement to bed." Stedman's Medical Dictionary 454 (1984).

Cindy Foley, the surviving spouse and personal representative of Donald Foley, deceased, sought legal counsel as the one year statute of limitations was about to expire, concerning the possibility of medical malpractice in connection with Mr. Foley's sudden death in the hospital. Plaintiff was advised that death as a result of a pulmonary embolism was unpreventable and untreatable and that given the presumed diagnosis, she had "no case." She was informed that the only way to determine if there was a reasonable basis to conclude that medical negligence had occurred would be to investigate the cause of death by performing an exhumation and autopsy.

On 8 September 1992, Dr. Charles W. Harlan performed an autopsy on the exhumed body of Donald Foley. Dr. Harlan is a forensic pathologist who also served as the Chief Medical Examiner for the State of Tennessee. Dr. Harlan reviewed Mr. Foley's hospital records and performed an autopsy to determine the manner and cause of death. In performing the autopsy, Dr. Harlan dissected and examined the body, including the organs and vessels. He also made photographs of the pulmonary artery, prepared a written autopsy report, prepared a microscopic summary, took handwritten notes, and included the morgue record sheet, the record of organ weights and sizes, and tissue samples from various organs and parts of Mr. Foley's body, including sections of the terminal pulmonary artery. Dr. Harlan concluded in a written medico-legal opinion:

> This 35 year old white male died as the result of exsanguination caused by intraoperative and post-operative blood loss during and following revision of the right total hip arthroplasty (hip prosthesis). The clinical history reveals progressively decreasing hematocrits. (44% prior to surgery, 30% after surgery, 25% 14½ hours after surgery, estimated 20% at the time of death). There is absolutely no pulmonary embolus present and the cause of death is positively not pulmonary embolus.

Plaintiff was subsequently advised that the results of the investigation concerning her husband's death indicated that he had bled to death. She filed suit thereafter against, *inter alia*, defendants St. Thomas Hospital, William A. Shell, and the Lipscomb Clinic.

Before defendants filed their answer, they moved for summary judgment on the ground that there was no genuine issue of material fact. In support of their motion, defendants relied solely on the affidavit of Dr. Lester Williams, a surgeon at St. Thomas Hospital. Dr. Williams stated, in part, in his affidavit as follows:

> [I]t is my opinion that Mr. Foley probably died of a massive pulmonary embolus ... Based upon my review of the record, the early post-operative care provided to Mr. Foley by Dr. Shell and hospital personnel followed accepted standards for pulmonary embolism prophylaxis and, thus, it is my opinion that Mr. Foley's death was not the result of anything Dr. Shell or hospital personnel did or failed to do. Rather, in my opinion, Mr. Foley's death resulted from a complication of surgery that could not reasonably have been forseen.

Plaintiff responded to the defendants' Motion for Summary Judgment by filing the affidavit of Dr. Charles W. Harlan, which included his medico-legal opinion.

Dr. Harlan stated in his affidavit, in part: "It is my opinion that Donald K. Foley died as the result of exsanguination following hip surgery. Mr. Donald K. Foley did not die of pulmonary embolus, nor any other pathological condition as set forth in the attached Opinion and Autopsy Protocol." Dr. Shell's deposition was also submitted to the court, but was limited to the issue of causation. Dr. Shell agreed with the opinion testimony set forth in Dr. Williams' affidavit that the cause of death was, in all probability, a pulmonary embolus. The issue of Donald Foley's declining hematocrit level was explored at length, and Dr. Shell admitted that a "bleeding death in the hospital is not acceptable."

The defendants, in their reply brief to the plaintiff's response to the Motion for Summary Judgment, objected to Dr. Harlan's affidavit on the ground that it failed to set forth the facts upon which his opinion was based. Plaintiff responded by filing an amendment to Dr. Harlan's affidavit which reiterated that the facts relied upon were the medical records of Donald Foley and the facts observed at the time of the autopsy. The defendants then moved to depose Dr. Harlan and to defer ruling on the summary judgment motion until Dr. Harlan's deposition could be considered.

Dr. Harlan was deposed by defendants on 14 October 1993. He testified, in part, that he advised counsel for plaintiff that an autopsy would be necessary to determine the manner and cause of death, based upon the medical records. Dr. Harlan believed that there was not sufficient material in the medical records to establish a diagnosis of pulmonary embolus, and he "was concerned because of the decreasing hematocrits." Dr. Harlan again testified that the cause of death was blood loss, exsanguination, and that pulmonary embolism was not a cause of death. He explained that he had examined the pulmonary arteries and trunk and that there was "no pulmonary embolism in this case, period." His examination included incising the pulmonary artery to identify whether or not a pulmonary embolus was present and taking a photograph to show no embolus was present. Tissues from the pulmonary artery were preserved in blocks and incorporated into the microscopic slide series. One of the slides, in particular, showed no pulmonary embolus present. Bleeding was found by Dr. Harlan at, and into, the operative site which was documented by photographs.

Dr. Harlan further testified by deposition that after the organs are removed from the body and sliced for tissue samples, they are cremated. In a supplemental affidavit Dr. Harlan stated that the autopsy performed on Mr. Foley was in accordance with the recognized standard of practice for pathologists performing autopsies throughout the country, and was in the manner in which he was trained at the University of Tennessee Center for Health Sciences in Memphis. He further stated in the affidavit that the disposal of organs following exhumation and autopsy was performed in this case just as he had done it in thousands of other autopsies performed in Nashville and Memphis. Affidavits submitted by defendants' expert pathologist, Dr. Fred Gorstein, stated:

In routine cases it is acceptable medical practice for a pathologist to incinerate organs following an autopsy. On the other hand, when the pathologist knows of the possibility of litigation regarding the cause of death of the person upon which the autopsy is performed, accepted medical practice requires the pathologist to preserve the organs so that they may be available to all who have an interest in the outcome of the litigation.

After the defendants had taken Dr. Harlan's deposition, they filed a motion to exclude the testimony of Dr. Harlan on the grounds that: (1) Dr. Harlan had destroyed the evidence upon which he was basing his opinion by cremating the eviscerated organs, which precluded defendants from examining that critical evidence; and (2) Dr. Harlan's opinion as to the cause of death was not "generally accepted" and his methods and reasoning were not "scientifically valid." Defendants also filed a Motion to Dismiss. Thus, defendants requested the court to

grant their motion for summary judgment as to causation, urged the exclusion of Dr. Harlan's testimony, and sought dismissal of plaintiff's complaint. Plaintiff countered by filing the supplemental affidavit of Dr. Harlan, which stated he performed the autopsy and disposed of the organs in a manner consistent with the recognized and routine standard of practice for pathologists. The supplemental affidavit also addressed the scientific basis for his opinion. Plaintiff further responded to the defendants' motion to dismiss by noting that Dr. Harlan's testimony should be admitted as relevant evidence, in that he performed the autopsy in an appropriate and standard manner. Defendants then filed the affidavit of Dr. Fred Gorstein, which was previously quoted in part.

On 7 January 1993, the trial judge heard the motion to exclude Dr. Harlan's testimony and heard argument on the motion to dismiss the complaint. By an order dated 19 January 1994, the trial court held that Dr. Harlan's testimony should be excluded on the grounds of spoliation of evidence. However, the court further held that the defendants' motion to dismiss should be overruled.

The plaintiff then moved for an interlocutory appeal, candidly admitting that without Dr. Harlan's testimony she would be "unable to establish the cause of Plaintiff's decedent's death to a reasonable degree of medical certainty and [would] be unable to establish the requisite element of causation sufficiently to raise the issue for submission to the trier of fact." On 7 June 1994, without hearing any further argument on the interlocutory appeal motion and the renewed motion for summary judgment, the trial court denied plaintiff's motion for interlocutory appeal and granted defendants' motion for summary judgment. The trial court noted that the plaintiff had conceded that without Dr. Harlan's testimony, causation could not be established and thus concluded the plaintiff would be "unable to establish any factual dispute as to defendants' deviation from the applicable standard of care or requisite causal relationship through expert testimony."

■ The plaintiff's first issue is: "Whether the trial court erred in excluding the testimony of Charles W. Harlan, M.D. on the ground of spoliation of evidence."

■ This court reviews the trial court's grant of summary judgment *de novo* upon the entire record with no presumption of correctness. *Brenner v. Textron Aerostructures, Inc.*, 874 S.W.2d 579, 582 (Tenn.App. 1993); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Summary judgments are an efficient means to conclude cases that can be disposed of on legal issues alone. *See Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). While the summary judgment procedure is not a substitute for trial, *Jones v. Home Indem. Ins. Co.*, 651 S.W.2d 213, 214 (Tenn.1983), it goes to the merits of the complaint and should not be taken lightly. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978).

■ No presumption of correctness attaches to decisions granting summary judgment because they evoke only questions of law. Thus, on appeal we must make a fresh determination concerning whether or not the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Hill v. City of Chattanooga*, 533 S.W.2d 311, 312 (Tenn.App. 1975). In doing so, we must determine whether a genuine issue of material fact exists, we must consider the pleadings and the evidentiary materials in the light most favorable to the movant's opponent, and we must draw all reasonable inferences in the opponent's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993).

> It is has been repeatedly stated [by the appellate courts of this state] that the purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed factual issues, or the determination of conflicting inferences reasonably to be drawn from facts. The purpose is to resolve controlling issues of law, and that alone.

*Bellamy v. Federal Express*, 749 S.W.2d at 33.

Plaintiff contends that Dr. Harlan's testimony was improperly excluded "on the grounds of spoliation of evidence." In the trial court's memorandum of 7 June 1994, the

court stated the basis for its remedy excluding Dr. Harlan's testimony as follows: "From a previous order of this Court, the testimony of Dr. Harlan in this matter is excluded due to the fact that Dr. Harlan destroyed all body tissue samples used in his determination of the cause of death of Plaintiff's husband."

As the plaintiff points out, the factual premise of the trial court's ruling to exclude Dr. Harlan's testimony that Dr. Harlan "destroyed all body tissue samples" is plainly incorrect. The record shows that Dr. Harlan preserved tissue samples from various organs and parts of Mr. Foley's body, including sections of the terminal pulmonary artery. In addition, glass slides with portions of the body tissue were retained along with photographs of the autopsy, including photographs which affirmatively, according to Dr. Harlan, ruled out defendants' theory of death as the result of pulmonary embolus.

The defendants also argued as one of the grounds for excluding Dr. Harlan's testimony, that Dr. Harlan's cremation of the organs following their evisceration and dissection constituted spoliation. Defendants' expert, Dr. Gorstein, conceded that cremation is acceptable medical practice in routine cases. The defendants would have this court impose a rule of law that in all autopsies, including those performed before any suit is filed or before there is any known reasonable basis in fact to conclude that there are grounds for suit, but where there is a "possibility of litigation," organs should be preserved and that failure to so preserve the organs justifies exclusion of all autopsy evidence. We are cited to no legal support, nor are we aware of any legal basis, for the defendants' position. Plaintiff contends that this position would upset settled policies concerning burial, cremation, autopsy, and the establishment of the cause of death by competent forensic pathologists and medical examiners. We find that to adopt such a rule would invite litigation and appeals and would effectively require retaining organs in nearly all autopsies, since litigation following death is always a possibility.

■ Plaintiff, as a surviving spouse, had the sole legal authority over the disposition of her husband's remains. *See* Tenn.Code Ann. § 68–4–111. To adopt a rule which would require plaintiff, and others similarly situated, to preserve, or cremate, her husband's remains, would violate the law's sensitive deference to the family's right to control the disposition of a loved one's remains and could violate the surviving spouse's freedom of religion. In a California case, *Walsh v. Caidin,* 232 Cal.App.3d 159, 283 Cal.Rptr. 326 (1991), plaintiff brought a wrongful death action alleging that her husband died as a proximate result of negligent treatment by defendants. Prior to death, decedent filed a medical malpractice action against defendant Walsh based on the allegation that defendant had failed to detect his cancer earlier. *Walsh,* 283 Cal.Rptr. at 327 n. 1. When plaintiff's condition deteriorated, defendant's attorney requested that if plaintiff were to die, an autopsy be performed. *Id.* The plaintiff died, and his wife chose to cremate the body. *Id.* at 327. The defendant's cross-claim in the wrongful death action asked the court to find that the surviving spouse had destroyed evidence by cremating the body, despite a contrary request by the defendant's attorneys. *Id.* The California court refused to recognize a cause of action for spoliation of evidence and noted that the plaintiff owed "no duty to preserve evidence, because the law recognizes a human corpse is not just another piece of physical evidence." *Id.* at 328. The court reasoned that if the law were contrary, criminal defendants could bring actions on the grounds that the coroner should not have cremated the body and should have kept it in storage. *See id.* at 329. Such an argument was made by a criminal defendant and rejected by the California courts in *People v. McNeill,* 112 Cal.App.3d 330, 169 Cal. Rptr. 313 (1980). Although the *Walsh* court refused to recognize a rule that would require preservation of a corpse or body parts, the court, at the conclusion of its opinion, noted that if there was proof that the cremation was done for the improper purpose of destroying evidence, the appellants could move the trier of fact to draw adverse inferences from such conduct. *Walsh v. Caidin,* 283 Cal.Rptr. at 329.

We think this State should adopt such a rule in the proper case. However, in this case there is no proof whatsoever that Dr. Harlan's cremation of the eviscerated and dissected organs was done for any reason other than the standard practice. As is pointed out by plaintiff, if Dr. Harlan's practice of cremating organs is subject to defendants' claim of spoliation and exclusion, thousands of autopsies performed by Dr. Harlan and other medical examiners, would be the subject of criminal appeals, just as in *People v. McNeill,* 112 Cal.App.3d 330, 169 Cal.Rptr. 313 (1980). We have been cited no case, nor have we found one, in which the practice of cremating organs after autopsy or exhumation has ever established a claim of spoliation. To the contrary, cremation as Drs. Gorstein and Harlan agree, is routine.

This record is devoid of any facts or evidence that suggest that Dr. Harlan's incineration of the deceased's organs was done negligently or intentionally to suppress the truth. There is no evidence that other experts in pathology would be prejudiced by not having the organs themselves. The records show that Dr. Harlan retained tissue samples, slides, and photographs of the relevant organs and body parts that were cremated. Nowhere did defendants establish by competent proof that another pathologist could not reasonably review Dr. Harlan's work. Dr. Gorstein's affidavit failed to address the issue of alleged prejudice. Dr. Harlan's action was done in accordance with his routine and standard practice, which even under the defendants' experts' scenario, is acceptable in routine cases. Defendants have failed to establish any intent to spoliate or destroy evidence. Dr. Harlan simply incinerated organs that had been dissected, photographed, and preserved, and he had preserved tissue samples and slides which he had done in thousands of other autopsies, many of which involved criminal inequity, pursuant to his role as the State of Tennessee and Davidson County's Chief Medical Examiner.

We have found case law to support the exclusion of expert testimony concerning an autopsy where the autopsy was performed *after litigation had commenced. Lewis v.*

*Darce Towing Co.,* 94 F.R.D. 262 (W.D.La. 1982); *Barker v. Bledsoe,* 85 F.R.D. 545 (W.D.Okla.1979). In both of these cases, the parties violated discovery rules and acted without notice to opposing counsel. Here, however, Mrs. Foley authorized the autopsy before litigation. In fact, the whole exercise was to determine whether there was even a basis to bring suit.

We do not attempt to make any ruling concerning a situation in which an ex parte autopsy is performed by an expert retained for the purpose of litigation without notice to the party, after litigation has been commenced, since that is not the fact situation in the instant case.

■ Absent proof that the autopsy was performed in a suspicious or unprofessional manner, there is no sound reason to place a duty on the plaintiff to preserve organs from cremation or other appropriate disposal. Only where the prelitigation disposal of body parts is a clear departure from the standard of care should there be a question on this issue. *See Welsh v. United States,* 844 F.2d 1239, 1243–45 (6th Cir.1988), in which the Sixth Circuit Court found that a surgeon's failure to preserve a skull bone flap for pathological examination was a departure from the requirements of joint commission standards and therefore could raise an adverse presumption.

We find nothing in this record to show that defendants have in any way established that they were prejudiced by Dr. Harlan's cremation of the organs. The defendants in this case had the first opportunity to obtain an autopsy, but failed to request a post-mortem examination, despite the unexplained circumstances of Donald Foley's death. Donald Foley's death was reported to the hospital's clinical risk management committee, and Dr. Shell was asked to provide information to that committee. There is no proof in this record that preserving the organs would provide defendants any additional information, especially considering the unrefuted proof that there was nothing found and nothing to save. At trial, Dr. Harlan can be fully cross-examined concerning the truth of his testimony that he found no pulmonary embolus.

This record is devoid of any evidence showing that Dr. Harlan should have known to preserve the organs for future litigation. Dr. Harlan did not find any evidence of a pulmonary embolism. Thus, there is no proof that he had any reason to preserve the organs. Absent such a showing by the defendants, who are charged with the burden of establishing that there are no material questions of fact, no sanction should be applied in a case such as this, when both the surviving spouse and the expert pathologist have acted reasonably.

We are of the opinion that Dr. Harlan's affidavit effectively raised a material question of fact in refuting defendants' affidavits and motion, which were premised upon the factual conclusion that death was most probably the result of a pulmonary embolus. Dr. Williams' affidavit addressed the standard of care *solely* by stating that the defendants complied with accepted standards for pulmonary embolism prophylaxis. Obviously, if death did not occur as a result of pulmonary embolism, there is no evidence from the movant's side to support compliance with the standard of care. Given the limited and conditional nature of Dr. Williams' affidavit, Dr. Harlan's testimony that Donald Foley did not die of a pulmonary embolism, but instead bled to death, creates material issues of fact as to both causation and the standard of care.

The trial court's entry of summary judgment should therefore be reversed and the cause remanded to the trial court for an evidentiary hearing upon all issues. Costs on appeal are taxed to the defendants/appellees.

BEN H. CANTRELL, J., and J.S. DANIEL, Special Judge, concur.