### The CLARK CONSTRUCTION GROUP, INC., Plaintiff,

v.

### CITY OF MEMPHIS and The Memphis Cook Convention Center Commission, Defendants.

No. 01–2780 Ma/An.

United States District Court, W.D. Tennessee, Western Division.

March 14, 2005.

Lucian T. Pera, Esq., Daniel Warren Van Horn, Armstrong Allen, PLLC, Memphis, TN, for Plaintiff.

Joseph T. Getz, Esq., Michael I. Less, Esq., Christopher M. Caputo, Less Getz & Lipman, Ricky E. Wilkins, Esq., Burch Porter & Johnson, Memphis, TN, Taylor Cates, Bowen Riley Warnock & Jacobson, Nashville, TN, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS FOR DOCUMENT DESTRUCTION

ANDERSON, United States Magistrate Judge.

Before the Court is Plaintiff's Motion for Sanctions for Document Destruction filed on July 23, 2004. United States District Judge Samuel H. Mays, Jr. referred this matter to the Magistrate Judge for Determination. For those reasons set forth below, Plaintiff's Motion is **GRANTED.**

### *BACKGROUND*

In February 1999 Clark Construction Group, Inc. ("Clark" or "Plaintiff") entered into a contract with the City of Memphis to perform renovations to the Memphis Cook Convention Center ("Convention Center"). Both before the contract was awarded and throughout the construction process, Clark contacted either the City or one of its authorized agents, including a joint venture be-

tween Williams Pounders Architects and The Pickering Firm ("WPA/P") and the Hdenak Bobo Group ("HBG"), for clarification of the design plans provided by the City to Clark. Specifically, Clark submitted over 2,000 requests for additional information and clarification. Clark alleges that it was not informed of various design and building problems before it was awarded the contract for the project.

Four years after beginning construction, Clark completed the additions to the Convention Center. Clark then sued the City of Memphis and the Memphis Cook Convention Center Commission (collectively the "City") for breach of contract, for negligent misrepresentation, and for breach of the implied covenant of good faith and fair dealing. Clark's Complaint was filed on September 27, 2001. The City has counterclaimed for liquidated damages, resulting from Clark's delay in completing the project.

On May 28, 2003, Clark served the City with its first Request for Production of Documents seeking, among other things, (1) correspondence between HBG and the City; (2) documents, either formal or informal, regarding HGB's work on the project and WPA/P's work on the project; (3) documents pertaining to reports, budgets, or presentations created by or presented to the Commission concerning the project; and (4) documents "that prove, support, deny or constitute discoverable evidence of any fact or circumstance upon which any claim in the complaint is based."

The City agreed to make documents available for Clark to review. On June 16, 2003 Mr. David Campbell ("Campbell"), a Clark contract administrator, went to the office of HBG to inspect various documents. Upon arriving at the office, Campbell noticed a trash bin full of what appeared to be shredded records and documents relating to the construction project. These records included e-mail, original pages from notepads, schedule printouts, and letters. The trash bin, which was accessible to the public, also contained discarded food, a cable bill, printed instructions on how to use Microsoft Outlook, a mortgage bill printout, and printouts from sports news web pages.

On June 25, 2003, Clark filed a Motion to Enjoin Destruction of Discoverable Material and for Expedited Relief. In their Response to Clark's Motion to Enjoin, the City admitted that some or all of the destroyed documents were subject to the subpoena served by Clark on HBG. (*See* Court's Order dated Aug. 1, 2004). For good cause shown, the Court granted Clark's Motion on August 1, 2003.[1] HBG agreed to reconstruct the destroyed documents, and in the Court's Order, the City was required to bear all costs associated with the reconstruction efforts. The City was also ordered to deliver the reconstructed documents to Clark as soon as possible, and to make witnesses available for deposition to testify about the document destruction.

Pursuant to the Court's Order, Clark deposed several persons, including Mr. James Webber ("Webber"), a former HBG employee and the on-site project manager during the construction project. Webber testified in his deposition that he "often had copies of Project documents made for himself so that he could annotate the copies with his contemporaneous thoughts and impressions." (Pl's Mem. In Supp. of Mot. for Sanctions, at 6). Unfortunately, Webber also had a practice of discarding and shredding documents that he thought were not relevant. During his deposition, Webber was unable to recall information that was contained within or written on the shredded documents, including notes from various meetings with persons related to this lawsuit. Other depositions revealed that the City did not instruct its employees or agents that they should not discard or destroy documents that might be considered relevant to this action.

While the City has produced over three million pages of documents in response to Clark's discovery requests and pursuant to the Tennessee Public Records Act, Clark contends that the City, through its agents, destroyed documents that were relevant to this action. Clark points out that some of the reconstructed documents contain handwritten notations that appear to be relevant.

---

1. United States Magistrate Judge Diane K. Vescovo granted the Motion at docket entry no. 67.

Clark argues that the City's destruction of the documents was willful, since it continued after the City was on notice of this lawsuit. Clark also argues that the destruction of the documents will likely prejudice Clark and its ability to prosecute its claims in this case. Finally, Clark argues that it has been deprived access to potentially beneficial evidence.

In response, the City contends that the documents destroyed were reasonably viewed as garbage. For example, Webber states that he only destroyed documents that a reasonable person would consider not to be relevant. The City also claims that these circumstances do not warrant punitive sanctions. Finally, the City argues that Clark has not and will not be prejudiced by the destruction of certain documents because the documents were primarily duplicate copies of files and because the papers contained no information which is not already available to Clark in the 3,000,000 pages of discover already produced in this case.

Clark requests that the Court enter default judgment on liability on Clark's claims. Alternatively, Clark requests that the Court establish, for the purposes of trial, that the design documents provided by the City were inadequate, that the City was aware of these inadequacies, and that the City concealed these inadequacies from Clark. Clark also requests that the Court award it the attorneys' fees and costs associated with conducting discovery regarding the destroyed documents and in bringing this Motion for Sanctions.

## ANALYSIS

### I. The Duty to Preserve

■ Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 216 (S.D.N.Y.2003). A party has a duty to preserve all evidence that it knows or should know is relevant to any present or future litigation. *Id.; see also Silvestri v. General Motors, Corp.,* 271 F.3d 583, 591 (4th Cir.2001). Before determining

if sanctions are appropriate, the Court must first determine the trigger date when a party is on notice to safeguard evidence. After determining the trigger date, the Court must also determine the scope of the duty to preserve.

■ The trigger date is the date a party is put on notice that it has a duty to preserve evidence. Any destruction of potentially relevant evidence that occurs before the trigger date would be harmless, since the party was unaware of a need to safeguard evidence. The destruction of documents and evidence after the trigger date, however, is not allowed. In this matter, Clark filed its Complaint on September 27, 2001, so as of this date, at the latest, the City was aware that certain documents should be safeguarded for a possible need during litigation proceedings. The facts show that potentially relevant documents were destroyed in June 2003, more than two years after the trigger date; therefore, the Court should continue its assessment and conclude the scope of the duty to preserve.

■ A party is under no duty to "preserve every shred of paper, every e-mail or electronic document" and the like. *Zubulake,* 220 F.R.D. at 217. A party, nevertheless, "must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* This includes any document made by an individual "likely to have discoverable information that the disclosing party may use to support its claim or defenses." Fed.R.Civ.P. 26(a)(1)(A). The duty to preserve extends to all relevant documents from the time the trigger date passes and continues thereafter, but the duty to preserve does not require a party to keep multiple identical copies of a document. *See Zubulake,* 220 F.R.D. at 218.

In his deposition Webber stated that he destroyed those documents which a reasonable person would not view as relevant. However, the decision as to what was potentially relevant should not have been left to Webber's sole discretion. Webber is not a lawyer, and counsel for the City admitted during the hearing that he was not necessarily qualified to ascertain whether a document or handwritten notation was potentially rele-

vant to Clark. While the Court does not doubt that Webber believes that any reasonable person should be able to make a determination as to relevance, Webber fails to recognize that what is reasonable to one person might not be reasonable to another. Likewise, what might be potentially relevant to a person trained in law might not be relevant to a lay person.

■ The Federal Rules of Civil Procedure state that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...." Fed.R.Civ.P. 26(b)(1). Relevancy means that the evidence "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see also Coleman v. Am. Red Cross,* 23 F.3d 1091, 1097 (6th Cir.1994). The Court should broadly interpret whether evidence is relevant. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 12, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting 4 J. Moore, *Federal Practice* § 26.96[1], at 26–131 n. 34 (2d ed.1976)). In this Circuit, the scope of discovery is extremely broad under the Federal Rules of Civil Procedure and "is ... within the broad discretion of the trial court." *Lewis v. ACB Business Servs. Inc.,* 135 F.3d 389, 402 (6th Cir.1998). The United States Supreme Court has also noted that discovery should be both broad and liberal. *See Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (citing *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

■ The documents destroyed in this case included copies of e-mails, original pages from notepads, schedule printouts, letters, and other items. Some of the documents contained notes handwritten in colored ink. The documents destroyed were related to discovery requests served by Clark, and "[c]ourts have held that parties are placed on notice that documents are relevant to litigation by court orders, discovery requests, and preservation agreements." *White v. Office of the Public Defender,* 170 F.R.D. 138, 148 (D.Md.1997). Therefore, because the City should have known these documents were relevant and because the scope of discovery is broad in this Circuit, the Court concludes

that these documents could have led to the admission of relevant evidence at trial. Therefore, the City was under a duty to preserve these documents.

■ Because there was a duty to preserve the documents, it was incumbent upon the City to establish a procedure that would eliminate the likelihood that potentially relevant documents would be destroyed. Alternatively, the City should have taken control of all documents and had a lawyer examine the documents before they were destroyed. The City had neither of these procedures in place, and the City, either directly or indirectly, allowed relevant documents to be destroyed long after the filing of the Complaint. Therefore, some sanction is proper against the City.

## II. Sanctions for Destroying Potentially Relevant Documents

■ The Court has both express power, under Federal Rule of Civil Procedure 37, and inherent power to impose sanctions for bad faith conduct during discovery. *See* Fed. R.Civ.P. 37; *Chambers v. NASCO,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Rule 37 provides two frameworks for the imposition of sanctions. First, under subsections (a) and (b), a party may move for an order to compel discovery. If that motion is granted and a party refuses or fails to comply with the Court's Order, the Court may issue a wide range of sanctions under Rule 37(b), including dismissal of the lawsuit. Second, subsection (d) provides for a less common scenario when sanctions may be imposed even though no prior court order has been issued. The Court may enter an order for sanctions under Rule 37(d), for example, if a party fails to attend a deposition or respond to discovery requests. Rule 37(d) also allows the Court to award attorneys' fees and expenses.

■ The Court may also impose sanctions based on its inherent authority. A court's inherent power "is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs

so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). This inherent power includes the Court's "power to control and supervise its own proceedings." *Smith v. Northwest Fin. Acceptance, Inc.,* 129 F.3d 1408, 1419 (10th Cir.1997).

 The decision to impose sanctions lies within the sound discretion of the trial court. *See Dillon v. Nissan Motor Co.,* 986 F.2d 263, 268 (8th Cir.1993). Sanctions are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). "[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999). The Court should adjust the severity of the sanction depending on the circumstances of each case, including analyzing whether the evidence was lost intentionally, negligently, or inadvertently. *See Potts v. Mayforth,* 59 S.W.3d 167, 171–72 (Tenn.Ct.App.2001); *Shahrdar v. Global Housing, Inc.,* 983 S.W.2d 230, 235–36 (Tenn.Ct.App.1998).

 This matter involves possible bad faith conduct during the discovery period and the destruction of potentially relevant evidence; therefore, "[t]he rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law...." *Beck v. Haik,* 377 F.3d 624, 641 (6th Cir.2004). In Tennessee a trial judge has the authority to take appropriate actions, as deemed necessary, to prevent discovery abuse. *Mercer v. Vanderbilt University, Inc.,* 134 S.W.3d 121, 133 (Tenn.2004).

## A. Dismissal

 Dismissal of an action is warranted if the wrongdoing party has committed "flagrant bad faith." *Jackson v. Nissan Motor Corp.,* 121 F.R.D. 311, 319 (M.D.Tenn. 1988) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). In the Sixth Circuit, "[d]ismissal is the sanction of last resort. It should be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault." *Beil v. Lakewood Engineering & Mfg. Co.,* 15 F.3d 546, 552 (6th Cir.1994). The word "willful" is defined in *Black's Dictionary* to mean "[v]oluntary and intentional, but not necessarily malicious." *Black's Dictionary* 1593 (7th ed.1999). Thus, it appears that a party's negligent or grossly negligent actions do not warrant dismissal of a suit.

Clark cites two Tennessee cases where a court entered a default judgment against a party for destroying evidence. First, Clark cites *Walt Disney Co. v. Great American Corp.* from the Middle District of Tennessee. In *Walt Disney,* the plaintiff served document requests on the defendant, but the defendant testified the documents were unavailable because they were stolen. *See Walt Disney Co. v. Great Am. Corp.,* No. 2:91–0075, 1993 WL 546781, at *2 (M.D.Tenn. June 22, 1993). Ultimately, the court in *Walt Disney* learned the defendant had lied about the location of the documents, as the documents were not stolen but were burned at defendant's instruction during the course of litigation. *Id.*

Second, Clark cites *Alexander v. Jackson Radiology Associates,* a case from the Tennessee Court of Appeals. In *Alexander,* the plaintiff was asked during a deposition to calculate his monthly personal compensation from his former employer. *Alexander v. Jackson Radiology Ass.,* 156 S.W.3d 11, 12 (Tenn.Ct.App. 2004). The plaintiff made notes on a piece of paper, which the defendants planned to introduce as an exhibit at the end of the deposition. *Id.* The piece of paper, however, disappeared and could not be located. *Id.* The plaintiff denied taking the paper, but after the defendants informed him the deposition proceeding had been videotaped, he admitted to taking the piece of paper and throwing the document away. *Id.*

The Court is unable to draw a similarity between the current case and the two cases cited by Clark. In *Walt Disney*, the document destruction was clearly malicious and intentional, as the plaintiff instructed an employee to "retrieve the [evidence] from the trailer, and take them to her farm to burn them." *Walt Disney*, No. 2:91–0075, at \*2. In *Alexander*, the plaintiff "had difficulty" in calculating his monthly compensation, a fundamental issue in his case for wrongful termination. As a result of his not being able to adequately come up with the same figures listed in his Complaint, the plaintiff intentionally pocketed a piece of evidence. *Alexander*, at 12. While counsel was looking for the document, the plaintiff denied knowing its location, and when questioned about the missing document on the stand, plaintiff denied throwing away the document until confronted with videotape evidence.

 In this matter the City admits to shredding over 2,000 pages of documents, but there is no evidence that the shredding occurred as a result of some intentional desire to hide evidence. Thus, the City's actions were not willful, and the City did not rise to the level of fault displayed in the *Walt Disney* and *Alexander* cases. Therefore, an order dismissing this action is not appropriate.

### B. Adverse Inference

 Imposing an adverse inference from the fact that evidence is missing "is a generally accepted principle of law that finds its roots in the 18th century case of the chimney sweeper's boy who found a jewel ring, took it to a jeweler for appraisal, got back the ring minus the jewel, and brought an action in trover." *Welsh v. United States*, 844 F.2d 1239, 1244 (6th Cir.1988). "When the contents of a document are relevant to an issue in a case, the trier of fact . . . may receive the fact of the document's . . . destruction as evidence that the party which

has prevented production did so out of the well-founded fear that the contents would harm him." *Nation–Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217 (1st Cir.1982) (Breyer, J.). An adverse inference sanction serves two purposes. First, the sanction attempts to place the non-spoliator in a position similar to where it would have been prior to the destruction of evidence. Second, the sanction imposes a punitive effect on the spoliating party.

 In determining whether an inference is appropriate, the Court should examine the culpability of the spoliator and the prejudice to the non-spoliator. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79, 81 (3d Cir.1994). In this Circuit, "[i]n general, a court may not allow an inference that a party destroyed evidence that is in its control, unless the party did so in bad faith." *Tucker v. General Motors Corp.*, No. 91–3019, 1991 WL 193458, at \*2 (6th Cir. Sept.30, 1991). The Court, however, stresses that the Sixth Circuit, in an unpublished opinion, notes that a negative inference should *generally* not be allowed absent bad faith.[2] Therefore, the Court should not be precluded from imposing a rebuttable adverse inference sanction against a party because the party did not act in bad faith.

 Additionally, in this Circuit "[t]he rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law. . . ." *Beck v. Haik*, 377 F.3d 624, 641 (6th Cir.2004). In Tennessee, "[t]rial courts have wide discretion to determine the appropriate sanction to be imposed." *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121, 133 (Tenn.2004). The Tennessee Court of Appeals has stated that an intentional act is a prerequisite for imposing a negative inference against a party. *Bronson v. Umphries*, 138 S.W.3d 844, 854

---

2. The Court is aware that numerous other Circuits have established that bad faith is a prerequisite to ordering a negative inference against a party. *See, e.g., Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed.Cir.1986) (two conditions precedent are destruction of evidence and bad faith); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir.1985); *Valentino v. United*

*States Postal Service*, 674 F.2d 56, 73 n. 31 (D.C.Cir.1982); *Vick v. Texas Employment Commission*, 514 F.2d 734, 737 (5th Cir.1975) (bad faith, not merely negligence, must be manifested under the circumstances). Nevertheless, the Court, using its inherent power, concludes that the facts of this case justify a rebuttable adverse inference against the City.

(Tenn.Ct.App.2003).[3] However, "trial judges have the authority to take such action as is necessary to prevent discovery abuse." *Mercer*, 134 S.W.3d at 133. Moreover, "[t]rial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing—a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 267 (2d. Cir.1999). Thus, because the Tennessee Supreme Court stresses that the trial court should have wide discretion to impose the appropriate sanction, the Court concludes that bad faith and an intentional and wrongful act are not prerequisites for imposing an adverse inference sanction. The Court shall therefore consider whether a negative inference is appropriate in this case.

Other courts have followed the Court's position that bad faith and intentional conduct are not prerequisites to imposing a sanction of an adverse inference. A district court in the Southern District of New York has noted that this sanction

> should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y.1991). *Turner* went on to note, however, that some extrinsic evidence should be available to show that the destroyed evidence would have been unfavorable to the spoliator. *Id.* at 77.

In one case the Sixth Circuit Court of Appeals altered the adverse inference sanction and imposed a rebuttable presumption in favor of the non-spoliating party. The court noted that:

> [w]hen, as here, a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, and the proof would otherwise be sufficient to survive a directed verdict, it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence. The burden thus shifts to the defendant-spoliator to rebut the presumption and disprove the inferred element of plaintiff's prima facie case.

*Welsh*, 844 F.2d at 1248.

The Fifth Circuit Court of Appeals has also held that negligent conduct can be sufficient to impose an adverse inference against a party. In *Pressey v. Patterson*, 898 F.2d 1018 (5th Cir.1990), a motorist was shot in the head by police officers and brought an action against the police officers and the city. During the discovery period of this lawsuit, two audio tapes containing an interview with a police sergeant were destroyed when the sergeant burned the tapes. The plaintiff made various discovery requests and specifically requested the interview tapes, but the city informed the plaintiff that the tapes had been erased through routine reuse. The trial court entered default judgment against the police and the city; however, the Fifth Circuit overturned that judgment and recommended an inference sanction. "The evidence certainly supports an inference that the City was negligent or even reckless in failing to take sufficient measures to retain the tapes; based on this, the trial court may wish to sanction the City by deeming [certain facts] ... as admitted by the City." *Id.* at 1024.

In the First Circuit Court of Appeals a money order seller sued its assignees for benefit of creditors of money order distributor for the proceeds of the money order sales. *See Nation–Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214 (1st

---

**3.** Other Tennessee courts reach a similar conclusion. *See, e.g., Foley v. St. Thomas Hosp.*, 906 S.W.2d 448, 453–54 (Tenn.Ct.App.1995); *Thur-*

*man–Bryant Elec. Supply Co., Inc. v. Unisys Corp., Inc.*, No. 03A01–CV00152, 1991 WL 222256, at *5 (Tenn.Ct.App. Nov.4, 1991).

Cir.1982). In that case, various documents, including some checks, were being stored at great expense by a Boston law firm. Although this lawsuit was already underway, an associate from the law firm wrote to his partner and "noted that the records were being stored at some expenses and asked if they should be discarded." *Id.* at 215. Following the advice of the partner, the associate ordered the storage facility to take control of the documents and records. It is undisputed that the associate did not act intentionally or in bad faith; however, the First Circuit affirmed the trial court's decision to impose an inference because the associate's "conduct was not merely negligent but 'purposeful' and 'in knowing disregard' of Nation–Wide's claim." *Id.* at 217. The court reasoned that by not punishing the defendant for its actions, others may "be encouraged to destroy relevant documents and claimants . . . would be denied their rightful property." *Id.*

 In this matter the Court should examine both the culpability of the City and the prejudice against Clark when determining if an adverse inference is appropriate. There is no evidence that the City wilfully destroyed documents to hide key evidence or out of fear that the evidence would assist Clark in its preparation of the case; however, as in the cases discussed, the City's actions were purposeful and grossly negligent. It was incumbent on the City and those representing the City in this action to preserve all documentation which was relevant or which might lead to the discovery of admissible evidence. However, the City and its representatives failed to do so.

Clark was also prejudiced by not having the documents to review and use during this litigation. The City was served with document requests for correspondence, papers, budgets, presentations, and any other document that would support any of Clark's claims. After receiving these requests, an agent of the City proceeded to shred thousands of pages of documents. The docu-

ments destroyed contained handwritten notes from agents of the City, and these notes may have been helpful to Clark. While some of these documents may have been duplicates, agents for the City have admitted that not all of these papers were duplicate copies. HBG took steps to reconstruct some of the documents; however, even after reconstruction, some of these documents are illegible. Clark may have been able to use these documents to prove their claims against the City; therefore, because the documents are not available for Clark's use, Clark has been prejudiced.

The decision to impose sanctions lies within the sound discretion of the trial court. *See Dillon v. Nissan Motor Co.,* 986 F.2d 263, 268 (8th Cir.1993). Moreover, as mentioned above, the severity of sanctions should be imposed depending on the facts of each lawsuit. The Court should both place the non-spoliating party in the position it should have been in and punish the spoliating party for its actions. In this case, the Court concludes that a rebuttable adverse inference is the appropriate sanction against the City. Such a presumption offers relief to Clark, which can never be provided legible copies of the documents improperly destroyed by the City. At the same time, by allowing the City the chance to rebut the adverse inference, the City is not unfairly punished for its grossly negligent conduct.[4] The rebuttable inference should include that the City had documents within its possession which most likely would have been relevant to this case; however, the City negligently failed to preserve the documents, and the documents were destroyed. The rebuttable presumption should also state that unless other evidence is provided to contradict this presumption, the trier of fact may presume that the City feared that the contents of the destroyed documents would have been adverse, or detrimental, to the City's case against Clark.

### III. Attorney's Fees

In their Motion, Clark also requests the Court order the City to pay any fees and expenses Clark incurred relating to this dis-

---

4. If there was evidence that the City intentionally or wilfully destroyed documents, the Court would have imposed a non-rebuttable adverse inference against the City. However, because the City was grossly negligent in allowing the destruction of documents, the Court concludes that a rebuttable presumption is the appropriate sanction.

covery dispute. Federal Rule of Civil Procedure 37 provides that the payment of reasonable expenses, including attorney's fees, is an appropriate sanction. *See* Fed.R.Civ.P. 37. In addition, "a court may assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dillon*, 986 F.2d at 266. The United States Supreme Court agrees with the *Dillon* court. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ("Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders.").

■ In this case, the City's actions have caused Clark numerous difficulties. Specifically, Clark has spent countless hours preparing memoranda for the Court and researching the true substance of the shredded documents. As such, the Court is of the opinion that the City should be required to pay the legal expenses relating to this discovery dispute. It is therefore Ordered that Clark's counsel submit to the Court within twenty days of entry of this Order a detailed accounting of fees and expenses incurred as it relates solely to the shredded documents and the Motion for Sanctions. Defendants shall have ten days thereafter to file objections to Clark's listing of fees and expenses.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Sanctions is **GRANTED**. At trial, Clark should be entitled to a rebuttable adverse inference establishing that the City had documents within its possession which most likely would have been relevant to this case; however, the City failed to preserve these documents, and the documents were destroyed. The Court also orders the City to reimburse Clark for any fees and expenses incurred as a result of this discovery dispute.

Pursuant to the Order of Reference, any objections to this Order shall be made in writing within ten days after service of this Order and shall set forth with particularity those portions of the Order objected to and the reasons for those objections.

**IT IS SO ORDERED.**