Vernon Ervin DILLON, Jr.; Louise Dillon, Plaintiffs–Appellants,

v.

NISSAN MOTOR CO., LTD.; Nissan Motor Corporation in U.S.A., Defendants–Appellees.

No. 92–1909.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1992.

Decided Feb. 23, 1993.

---

JOHN R. GIBSON, Circuit Judge.

Vernon and Louise Dillon appeal from an adverse judgment entered on a jury verdict in their products liability suit against Nissan Motor Company, Ltd. and Nissan Motor Corporation in U.S.A. At trial, the Dillons were prohibited from calling an expert witness, Dr. Mario Gomez, because he had ordered that evidence be destroyed. The Dillons argue that the district court[1] erred in prohibiting Dr. Gomez from testifying, allowing Nissan's counsel to repeatedly argue misconduct and spoliation of the evidence, and instructing the jury that it could draw an adverse inference from the Dillons' failure to produce evidence. The Dillons also argue that several other evidentiary decisions were erroneous. We affirm.

Vernon Dillon was a back seat passenger in a 1978 Datsun B–210 (manufactured by Nissan) which collided with a trailer that swerved out from behind an oncoming vehicle. Dillon received massive head and facial injuries, and claims they were caused by his coming into contact with a seat belt retractor on the car's left "B-pillar" during the collision. After the collision, the Dillons' counsel contacted Timothy Finley, an expert, to inspect the accident vehicle. Finley inspected and extensively photographed the entire vehicle, including the seat belt retractor. Finley informed the Dillons' attorney that he did not believe any design defects were present.

The Dillons' attorney then sent the car to the engineering consulting firm of Dr. Mario Gomez, another expert. Gomez extensively photographed the entire vehicle. During his inspection, he removed the seat belt retractor assembly and the B-pillar for future examination. After Gomez finished his inspection, the local police requested that the vehicle be removed from Gomez's parking lot. Gomez had the car towed to a salvage yard, and the Dillons' attorney was notified of the car's removal approximately two weeks before it was destroyed.

Del F. Phillips, Clayton, argued (Ray B. Marglous, on the brief), for appellant.

Jordan B. Cherrick, St. Louis, argued (Andrew B. Mayfield, Ben Ely, Jr., and John G. Enright, on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

The Dillons thereafter filed this action against Nissan, and during discovery, produced the B-pillar and seat belt retractor, answered interrogatories stating that Gomez was the only person who had inspected the Datsun, and reiterated this answer in supplemental interrogatories. Following further discovery, however, a third expert retained by the Dillons, Wallace Diboll, disclosed in his deposition that Finley had also inspected and photographed the vehicle.

On September 27, 1990, after the Dillons had answered the interrogatories but before Diboll's deposition testimony revealed Finley's inspection, Nissan filed a motion to dismiss or exclude evidence and testimony related to Gomez's inspection. Affidavits were filed and a magistrate judge[2] conducted an evidentiary hearing. During these proceedings, the Dillons did not tell the magistrate judge or defense attorneys that Finley had inspected and photographed the car. The magistrate judge found that the Dillons and their representatives had destroyed crucial evidence but did not do so in bad faith. Although the magistrate judge noted that Nissan had a strong case for outright dismissal, he did not recommend it. Instead, the magistrate judge concluded that Gomez should be excluded as an expert witness because Nissan had been prejudiced by the inability to inspect and perform tests on the damaged vehicle.

The district court reviewed the magistrate judge's report, precluded Gomez from testifying, and excluded any evidence derived from his inspection, including photographs, a mock-up of the Datsun B–210 automobile, and a videotape. At trial, Nissan called Finley as a witness. Finley testified that the Dillons' attorney had hired him to inspect the Datsun B–210, and he stated that he could not find any defects in the automobile. He concluded that the seat belt retractor did not cause Vernon Dillon's injuries. Nissan's attorney made several comments about the destroyed evidence and read the Dillons' interrogatory answers (in which Finley's identity and work product were not revealed) to the jury. The court instructed the jury that it could infer that the destroyed evidence would have been unfavorable to the Dillons. The jury returned a verdict for Nissan, the court denied the Dillons' motion for a new trial, and this appeal followed.

I.

The most critical issues in this case are whether the district court erred in excluding Dr. Gomez's testimony, photographs, and exhibits; in allowing Nissan's counsel to repeatedly argue misconduct and spoliation of the evidence; and in instructing the jury that it could draw an adverse inference from the Dillons' failure to produce evidence.

The Dillons argue first that the district court erred in excluding Gomez's evidence because there was no finding that the Dillons' attorney or expert destroyed the car in bad faith, and that Nissan had ample evidence regarding defective design and the cause of Dillon's injuries available before trial. The Dillons, however, do not amplify their bad faith argument beyond a simple statement in the argument caption.

The Supreme Court has held that a court may assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers v. NASCO, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). The Court has also held that dismissal may be ordered as a sanction upon a finding of bad faith, willfulness, or fault. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 640, 96 S.Ct. 2778, 2778, 49 L.Ed.2d 747 (1976); *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958). This case, however, involves neither an assessment of attorneys' fees nor dismissal. Instead, the district court relied on its inherent power to

---

**2.** The Honorable Robert D. Kingsland, United States Magistrate Judge for the Eastern District of Missouri.

exclude Gomez's evidence because the vehicle was destroyed before this case was filed and (at least at the time of the order and to the court's knowledge) the Dillons had not violated a discovery order which would have invoked the sanctions available under Fed.R.Civ.P. 37.

■ We review a court's imposition of sanctions under its inherent power for an abuse of discretion. *Chambers,* — U.S. at ——, 111 S.Ct. at 2138; *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990). This is true with regard not only to the sanction imposed, but also to the factual basis for the sanction. *See Chambers,* — U.S. at ——, 111 S.Ct. at 2138; *see also Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2460 (rejecting a three-tier standard of review for Rule 11 violations, and adopting an abuse-of-discretion standard for reviewing all aspects of the district court's determination); *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781 (determining that a district court did not abuse its discretion in both finding bad faith and concluding that the sanction of dismissal was appropriate). As we recognized in *Frumkin v. Mayo Clinic,* 965 F.2d 620, 626–27 (8th Cir.1992), the issue is not what we might have done if the situation had been presented to us originally, but rather, whether the district court abused its discretion in imposing the sanction.

■ In *Harlan v. Lewis,* 982 F.2d 1255 (8th Cir.1993), we discussed in detail a court's inherent powers and the requirement of finding bad faith before imposing sanctions. *Id.* at 1258–1260. We held that a showing of bad faith is not necessary to support a monetary sanction against counsel, and recognized that the "bad faith" requirement does not extend "to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of inherent power." *Id.* at 1260. Here, the district court based its order to exclude Gomez's testimony, photographs, and exhibits on the magistrate judge's finding that "both plaintiffs' expert and plaintiffs' attorney

knew or should have known that the car was an important piece of evidence which should have been preserved in its entirety." Magistrate's Report and Recommendation at 6. We must decide whether this finding is sufficient to support the order.

A number of district courts have sanctioned parties for the destruction of evidence under findings similar to these. *See, e.g., Capellupo v. FMC Corp.,* 126 F.R.D. 545 (D.Minn.1989) (stating that "[s]anctions are appropriately levied against a party responsible for causing prejudice when the party knew or should have known that the destroyed documents were relevant to pending or potential litigation"); *Wm. T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D.Cal. 1984) (recognizing that "[s]anctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information"); *see generally* Jamie S. Gorelick et al., Destruction of Evidence § 3.11 (1989 & Supp.1990). We do not hesitate in determining that the findings in this case— a retained witness and counsel destroyed evidence that they knew or should have known was relevant to imminent litigation—are sufficient for imposing sanctions.

■ Before a sanction for destruction of the evidence is appropriate, however, there must also be a finding that the destruction prejudiced the opposing party. The Dillons contend that Nissan was not prejudiced because it had ample evidence available before trial to defend against the defective design claim and determine the cause of Vernon Dillon's injuries. The magistrate judge dismissed a similar argument as bordering on "ludicrous." Magistrate's Report and Recommendation at 9. The magistrate judge found:

Despite the conclusory affidavit provided by Dr. Gomez, plaintiffs' second expert Wallace Diboll ... testified that the vehicle would be helpful in the reconstruction of the accident and, therefore, would be relevant evidence. Dr. Gomez made

no measurements of the damaged areas of the vehicle, nor did he document the nature and the location of dents and occupant markings, which he admits were present in the passenger compartment.... [U]pon inspection of [Gomez's] photographs, it is clearly apparent to this court that these photographs are not comprehensive, that they fail to document the condition of the interior of the vehicle after the accident, they are grainy and blurred, and in many instances, fail to properly document crucial areas of the vehicle. It is impossible with any degree of certainty to estimate measurements from the photographs. It is impossible to inspect the passenger compartment of the vehicle to see whether or not there were any contact marks, or evidence of blood or skin inside the vehicle.... Thus, it is certain beyond doubt that defendants have suffered prejudice as evidence which may have provided [sic] helpful to the defense has been destroyed.

*Id.* at 9–10. The district court did not abuse its discretion in adopting the magistrate judge's finding that Nissan was prejudiced.

▇ Finally, whether the extent of a sanction is appropriate is a question peculiarly committed to the district court. *See Frumkin,* 965 F.2d at 626–27. Our recent discussion of this issue in *Frumkin* is particularly applicable to the facts in this case.

In *Frumkin,* the plaintiff telephoned two defense physician-witnesses and threatened to kill them. 965 F.2d at 626. The defendant sought dismissal to protect its rights and the court's integrity. *Id.* Instead of immediately dismissing the action, the district court entered a restraining order, threatening that it would dismiss the action if the plaintiff violated the order. *Id.* We stated:

> We give considerable deference to the district court's actions in addressing a litigant's misconduct. The district court is "accorded considerable latitude in dealing with serious abuses of the judicial process and (its) determination to dismiss a case for such reason should be re-

viewed only for abuse of discretion." ... The district court must give " 'thoughtful consideration,' " ... to all the relevant factors presented in the case, but it is not for us to substitute our own judgment for the district court's....

> In this case, the district court fully considered the relevant factors, including Frumkin's egregious behavior and his troubled psychiatric background, as well as the various options available to the court.... The court's choice of a restraining order, backed up with the assurance that it would dismiss Frumkin's suit if he disobeyed the restraining order, adequately protected both Mayo and the integrity of the court. We have no doubt that Frumkin's misconduct was so serious that, had the district court chosen to dismiss this case, we would have found it difficult to reverse. However, the injunctive order as entered was well within the district court's discretion to craft an appropriate remedy. We affirm the court's denial of the motion to dismiss.

*Id.* at 626–27 (citations omitted).

We need not debate whether witness death threats are more egregious than the destruction of evidence (even though the Dillons' counsel knew that Finley's examination and inspection produced adverse results and another inspection might produce the same). The district court, as in *Frumkin,* was not obligated to and did not dismiss the case; instead, after reviewing the facts, the district court chose to exclude Gomez's testimony, photographs, and exhibits. When the additional facts regarding Finley's inspection came to light, the district court did not change its order. These decisions are within the district court's sound discretion, and we believe that the sanction imposed was not an abuse of that discretion.

In addition, Fed.R.Civ.P. 37 supports the sanction. Although this is not a proceeding under that rule, the destruction of evidence that a party knew or should have known was relevant to imminent litigation certainly justifies a sanction under the court's inherent power comparable to the Rule 37 sanctions. When a party fails to

cooperate or make discovery under Rule 37, the court may prohibit "that party from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B). The exclusion of Gomez's evidence in this case was appropriate as the destruction of evidence is at least as serious as, if not more serious than, the failure to answer or respond to discovery requests.[3]

Nissan argues that the Dillons acted in bad faith, intentionally, or with fault, and dismissal was the only appropriate remedy. Nissan's favorable jury verdict, however, renders moot the denial of its request for dismissal. *See, e.g., Brassette v. Burlington Northern Inc.*, 687 F.2d 153, 158 (8th Cir.1982) (dismissing cross-appeal on denial of request for directed verdict as moot after we affirmed favorable jury verdict).

The district court did not abuse its discretion in making the predicate findings to support the sanction of excluding Gomez's testimony, photographs, and exhibits, nor did the court abuse its discretion in imposing the sanction itself.

 The Dillons also argue that the district court erred in allowing Nissan's counsel to repeatedly allege that the Dillons' counsel had engaged in misconduct by allowing the vehicle to be destroyed. Although the Dillons filed a motion in limine, counsel failed to properly object during trial when the statements at issue were made. The issue therefore was not properly preserved, and we review only for plain error. *Doe ex rel. Doe v. B.P.S. Guard Servs., Inc.*, 945 F.2d 1422, 1427 n. 3 (8th Cir.1991). After carefully reviewing the statements to which the Dillons direct us, we note that the comments not only were not plain error, they were appropriate in light of the facts: the Dillons' counsel knew the car was going to be destroyed, the car was destroyed, neither Diboll nor representa-

tives for Nissan ever actually inspected the car, and despite interrogatories and a hearing in front of a magistrate judge, the Dillons failed to disclose Finley's inspection and photographs until Diboll's deposition.

 Finally, the Dillons argue that the court erred in instructing the jury that it could draw an adverse inference from the Dillons' failure to produce evidence. The court considered two instructions—one of which Nissan had offered as an alternative, more stringent, instruction. The Dillons' attorney stated that Nissan's alternative instruction was "inappropriate," but he did not object to the instruction actually given. Again, as the Dillons failed to object, we review only for plain error. *See Krementz v. Raby*, 959 F.2d 695, 697 (8th Cir.1992). The court's instruction did not rise to the level of plain error. The instruction did not require that the jury infer the evidence was unfavorable to the Dillons, it stated that the jury *"may* infer that the evidence is unfavorable to the party who could have produced it and did not." (Emphasis added).

### II.

 The Dillons raise several other arguments that need not detain us long. First, they argue that the district court gave a "second collision" instruction that incorrectly required the Dillons to prove that the Datsun B–210's defective design was the "sole cause" of Vernon Dillon's enhanced injuries. The Dillons, however, not only failed to object to the instruction, they waived any argument of error when they offered a virtually identical instruction. "[I]t is 'fundamental that where the defendant "opened the door" and "invited error" there can be no reversible error.'" *Federal Crop Ins. Corp. v. Hester*, 765

**3.** Even though neither the magistrate judge nor the district court found bad faith, the order was issued before Diboll's deposition disclosed additional facts. These facts might have supported a finding of bad faith and at least similar, if not more severe, sanctions under Rule 37. While we need not explore these issues further, the following facts are material: (1) Finley had inspected and photographed the car, and he told the Dillons' counsel that there were no defects present; (2) the Dillons failed to disclose Finley's examination, photographs, and conclusions in either their answers to the interrogatories, or at the evidentiary hearing before the magistrate judge, in spite of questions that would have called for this information; and (3) the car was destroyed, with the Dillons' counsel's knowledge, after Gomez had inspected the car and concluded that there were defects present.

F.2d 723, 727 (8th Cir.1985) (quoting *United States v. Steele*, 610 F.2d 504, 505 (8th Cir.1979)).

 Second, the Dillons argue that the district court erred when it allowed Nissan to present evidence of its compliance with federal safety standards. "In ruling on the admissibility of evidence, the trial judge has wide discretion, and his decisions will not be disturbed unless there is a clear and prejudicial abuse of discretion." *Roth v. Black & Decker, U.S., Inc.*, 737 F.2d 779, 783 (8th Cir.1984) (citation omitted). A negligence claim was pending before the district court when the federal safety standards compliance evidence was admitted. As the compliance evidence was relevant to the negligence claim, *see Ward v. City National Bank & Trust Co.*, 379 S.W.2d 614, 619 (Mo.1964), the district court did not abuse its discretion.

 Third, the Dillons argue that evidence of Vernon Dillon's cocaine and marijuana use and possession was irrelevant and highly inflammatory. We, however, leave the balance between relevance and prejudice under Fed.R.Evid. 403 in the hands of the district court, and will reverse only if there is an abuse of discretion. *See Jones v. Thompson*, 974 F.2d 86, 88 (8th Cir.1992) (per curiam); *United States v. Lucas*, 932 F.2d 1210, 1217 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991). The Dillons attempted to prove that Vernon Dillon suffered emotional injuries, becoming explosive and unable to control his rage. Nissan attempted to refute or diminish these claims by showing that Dillon used drugs and that drug use may cause aggressive and hostile behavior. The district court, therefore, did not abuse its discretion in allowing the drug use and possession evidence.

Fourth, the Dillons argue that the district court erred when it precluded two of the Dillons' experts, Diboll and Dr. Simon Hornstein, from testifying about the cause of Vernon Dillon's injuries. This argument does not justify extended discussion. We cannot be certain that the desired testimony from Hornstein and Diboll was excluded. Even if it was, there was no offer of

proof sufficient to present the issue to us for a ruling. *See Strong v. Mercantile Trust Co.*, 816 F.2d 429 (8th Cir.1987), *cert. denied*, 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988).

 Finally, the Dillons argue that the court should have admitted a *Consumer Reports* article which detailed Datsun B–210 safety test results. The district court's decision to exclude the report was within its strict discretion. *Saturn Mfg. v. Williams Patent Crusher & Pulverizer Co.*, 713 F.2d 1347, 1357 (8th Cir.1983). We have carefully reviewed the transcript and conclude that the district court applied the rules of evidence evenhandedly, and committed no abuse of discretion in excluding the article.

We affirm the judgment.