**Jerry M. BASS and Bonnie Bass, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No.  95–0171–CV–W–2.

United States District Court, W.D. Missouri, Western Division.

June 17, 1996.

**1288**

---

William H. Pickett, Gregory J. Abella, William H. Pickett, P.C., Kansas City, MO, for Plaintiffs.

Sherry A. Rozell, Gregory W. Aleshire, Rodney E. Loomer, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, MO, for Defendant.

## ORDER

GAITAN, District Judge.

Pending before this court is defendant General Motors Corporation's motion for sanctions. The above captioned action was brought by plaintiff alleging negligence and strict liability in connection with a collision involving a 1986 Oldsmobile Cutlass Ciera, driven by plaintiff Jerry M. Bass. Defendant contends the present lawsuit should be dismissed as a sanction for plaintiff's "selective destruction" of evidence "crucial" to General Motors' defense of this action.

On June 10, 1986, plaintiff Jerry Bass was involved in a head-on collision and, during that collision, plaintiff alleges that his head struck the windshield as the result of a defect in the design of the driver's seat belt. On the day of the accident, plaintiff Bonnie Bass concluded that her husband's injuries were due to the defective design of the seat belt in the vehicle. (Defendant's Exhibit B, p. 404). Plaintiffs retained counsel within two weeks of the accident in order to prosecute the seat belt claim. (Defendant's Exhibit B, p. 324).

Following the accident, the vehicle was towed to Ace Tow Company and stored at the Ace Tow Lot. At the time the vehicle was at the tow lot, Hugh and Laverna San-

dige, parents of plaintiff Bonnie Bass, looked at and took pictures of the vehicle. On July 15, 1986, Ken Carter, an expert retained by plaintiffs' counsel, as well as Pat Coyne, inspected the vehicle and removed the seat belt. Plaintiffs' counsel videotaped the removal of the seat belt but other portions of the inspection did not record. (Plaintiffs' Exhibit N; Defendant's Exhibit G, p. 26). The seat belts were retained by plaintiffs with the remainder of the vehicle subsequently sold for salvage. Ultimately, some time in 1986, the vehicle was destroyed. Plaintiffs eventually filed a complaint against General Motors in state court on June 7, 1991.

Plaintiff Bonnie Bass has testified that she, with the assistance of counsel, acquired and transferred title of the vehicle to the insurance company. (Defendant's Exhibit B, p. 353; Defendant's Exhibit P, No. 36). Plaintiff Bonnie Bass has admitted that she made no effort to preserve the vehicle for defendant's inspection or as evidence for trial. (Defendant's Exhibit O, Nos. 73 and 73). In addition, plaintiff Bonnie Bass has stated that she had no knowledge concerning whether plaintiffs' counsel made any effort to preserve the vehicle as evidence for trial. (Defendant's Exhibit P, No. 37).

■ The district court has discretion to impose sanctions under its inherent disciplinary power. *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 280 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995); *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 267 (8th Cir.1993). Sanctions may be appropriate against a litigant who destroys evidence and is on notice or should have known that the evidence was relevant to potential litigation, had the opportunity to preserve the evidence and failed to do so. *Dillon,* 986 F.2d at 267; *Sylla–Sawdon,* 47 F.3d at 280. The court must make a finding, however, that the destruction prejudiced the opposing party. *Dillon,* 986 F.2d at 267.

■ Plaintiffs contend that sanctions are not appropriate in the present action for myriad reasons. First, plaintiffs argue they were unaware of the need to retain the vehi-

cle. Plaintiff Bonnie Bass states in her affidavit that she did not know, nor was she told by anyone, including counsel, that it would be important to retain the entire vehicle. (Plaintiffs' Exhibit A). In addition, plaintiffs maintain that destruction of the vehicle was not due to a deliberate scheme to deprive defendants of information helpful to its defense.

Regardless of what plaintiff Bonnie Bass knew or didn't know, plaintiffs' counsel and retained expert knew or should have known that the vehicle was important, relevant evidence which should have been preserved in its entirety. The fact that the destruction was not "willful" or "malicious" is of no consequence. *Dillon*, 986 F.2d at 267 (finding of "bad faith" not necessary when a retained witness and counsel destroyed evidence that they knew or should have known was relevant to imminent litigation). Clearly, plaintiffs had the opportunity to preserve the vehicle and plaintiffs do not argue the contrary. In fact, in her affidavit, plaintiff Bonnie Bass avers that had she been informed of the necessity to preserve the vehicle as evidence, she would have cooperated to make sure the vehicle was retained. (Plaintiffs' Exhibit A). Additionally, there exists no doubt that plaintiffs intended to pursue litigation against General Motors before the vehicle was destroyed.

Plaintiffs next argue that despite any action or inaction on the part of plaintiffs, defendants have not been prejudiced by plaintiffs failure to preserve the entire vehicle. Plaintiffs state that photographs and a video exist which depict the interior of the vehicle and the alleged defective seat belt was retained. Defendant, however, contends that plaintiff was not wearing his seat belt at the time of the accident. Defendant's experts have stated that had the vehicle not been destroyed, they would have been able to observe other "evidence" which would indicate whether plaintiff was belted during the accident. (Defendant's Exhibit J, ¶ 12; Defendant's Exhibit K, ¶ 13). In addition, defendant's expert Pamela Oviatt has stated that neither the photographs nor the video tape "depict the interior front occupant compartment and lower instrument panel where witness marks, blood, hair, tissue or fibers, would be expected." (Defendant's Exhibit J, ¶ 12).

Even plaintiff's expert, Jonathan Sharp, has stated that to determine whether or not the steering column had collapsed, he would need better photographs or actually inspect the vehicle. (Defendant's Exhibit L, p. 45). Sharp has further testified that inspection of markings on the vehicle itself would help determine whether or not an occupant was belted at the time of a collision and because it is difficult to document the condition of the vehicle in photographs, he would have recommended retention of the vehicle. (Defendant's Exhibit L, pp. 45, 81). Plaintiff's expert Boulter Kelsey also testified that retention of the vehicle would have been important to determination of other witness marks in the interior of the vehicle. (Defendant's Exhibit M, p. 60). Without question, defendant has suffered prejudice in its defense of this action which would justify the imposition of sanctions.

Because the court finds that sanctions should be imposed against plaintiffs for their conduct in failing to preserve the vehicle, it must be determined what sanctions are appropriate. "[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Dillon*, 986 F.2d at 268 (citing *Frumkin v. Mayo Clinic*, 965 F.2d 620, 626–27 (8th Cir.1992)).

Defendant maintains that dismissal of the above-captioned action is the only proper remedy in that plaintiffs have seriously impaired its ability to prove that plaintiff was unbelted at the time of the accident. Defendant contends that merely authorizing the jury to make inferences or presumptions will not suffice in that plaintiffs have retained experts who are able to forcefully argue their position without fear that defendant will have physical evidence to disprove their theories.

Defendant, however, has failed to demonstrate that it is unable to put on any defense at all. While other evidence from the interior of the vehicle might have been helpful to defendant, the failure of defendant to have access to the vehicle before its destruction has not precluded defendant's expert from

examining the alleged defective seat belt which was retained by plaintiffs, and arriving at a conclusion about whether plaintiff Jerry Bass was belted at the time of the accident. For example, defendant's expert has stated that during her examination of the seat belt, she "noted that the driver lap and shoulder belt retractor operated normally in all respects. The retractor locked when tilted from its 'installed in-vehicle' orientation and also when lightly impacted." (Defendant's Exhibit J, ¶ 10). Oviatt further states that she

> observed no evidence of loading on the belt system components indicating that the driver was lap and shoulder belted during the accident. The damage and deformation observed conflicts with what would be expected had the restraint system been in use. My opinions regarding the seat belt in this case are as follows:
>
> a) This was a "head on" collision and the interaction of the vehicle with the other vehicle involved in this case, a 1974 Dodge sedan, brought about significant deformation to the Cutlass Ciera.
>
> b) The driver's lap and shoulder belt restraint system displayed no evidence of loading by the driver, and it is therefore my opinion that the restraint system was not being worn at the time of the accident.
>
> c) The lap and shoulder belt retractor operated correctly and all belt system components are intact.
>
> d) There is no evidence suggesting a defect existed in the seat belt system which prevented its proper operation.
>
> 11. Because the driver (Jerry Bass) was unrestrained, he moved forward during the accident, hitting his head on the windshield. His kinematics and the injuries he received during the accident are not consistent with those which a belted occupant would have experienced in this accident.

(Defendant's Exhibit J, ¶¶ 10, 11).

Based on the evidence available, defendant's expert was able to reach an opinion concerning whether or not plaintiff was belted at the time of the accident. Because this court finds that defendant has not been entirely precluded from presenting a defense in the above-captioned action, dismissal of this action is not appropriate. The court will, however, impose alternative sanctions against plaintiffs because defendant has been prejudiced in its ability to defend this action.

Therefore, plaintiff will be precluded from offering the testimony of either Ken Carter or Pat Coyne, the two individuals who have first-hand knowledge concerning the inspection of the vehicle and the removal of the seat belt. In addition, defendant's attorneys will be permitted to argue and the court will instruct the jury that an adverse inference may be drawn from plaintiffs' failure to preserve the vehicle.

Accordingly, it is hereby **ORDERED** defendant's motion for sanctions is GRANTED in part as set forth in this Order. It is further **ORDERED** that plaintiffs' motion for oral argument is DENIED.