**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. EC-14-1204-JuFD |
| RONALD DAVID SUTTON and KIMBERLY ANN SUTTON, | Bk. No. 12-35623 |
| Debtors. | Adv. No. 12-02590 |
| _____ | |
| ANDREW KOSTECKI; ALLOY STEEL NORTH AMERICA, INC., | |
| Appellants, | |
| v. | M E M O R A N D U M[*] |
| RONALD DAVID SUTTON, | |
| Appellee. | |
| _____ | |

Argued and Submitted on November 19, 2015
at Sacramento, California

Filed - December 3, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable David E. Russell, Bankruptcy Judge, Presiding[**]

_____

Appearances:    Michael W. Thomas of Thomas & Associates argued for appellants Andrew Kostecki and Alloy Steel North America, Inc.; Brian Crone of Berry & Block argued for appellee Ronald David Sutton.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] The Honorable Michael S. McManus was assigned to the underlying bankruptcy case and heard all pretrial matters in this adversary. Judge Russell entered the order on appeal.

-1-

Before: JURY, FARIS, and DUNN, Bankruptcy Judges.

Appellants Andrew Kostecki (Kostecki) and Alloy Steel North America, Inc. (Alloy Steel) (collectively, Plaintiffs) filed an adversary proceeding against chapter 7[1] debtor, Ronald David Sutton (Debtor), seeking to have their unliquidated prepetition debts declared nondischargeable under § 523(a)(2)(A). Prior to trial, Debtor filed a motion in limine (MIL) seeking to strike Plaintiffs' alternate direct testimony (ADT) declarations and exhibits at trial because they were not timely served, in violation of Local Bankruptcy Rule (LBR) 9017-1.

The bankruptcy court commenced the trial by first hearing Debtor's MIL. The court granted the motion, finding that Plaintiffs' untimely served ADT declarations and exhibits in violation of LBR 9017-1 caused extreme prejudice to Debtor and the court. The court then invited Plaintiffs' counsel to proceed with the trial. Counsel did not do so, contending that he had nothing to proceed with in light of the court's ruling on the MIL. The bankruptcy court subsequently entered judgment in Debtor's favor on the ground that Plaintiffs had presented no evidence to support their fraud claims against Debtor. This appeal followed.

For the reasons stated below, we REVERSE the bankruptcy court's order granting Debtor's MIL, VACATE the judgment and REMAND this matter to the bankruptcy court for further

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

proceedings not inconsistent with this memorandum disposition.

## I.  FACTS

**A.  Prepetition Events**

Debtor and his company, Ron Sutton's Winners Circle, Inc. (RSWC), operated a race car driver development program in Roseville, California.  The program trained young drivers for a professional career in stock car racing, including races sanctioned by the National Association of Stock Car Auto Racing (NASCAR).

Kostecki's minor son, Brodie, was an accomplished midget race car driver in Australia.  Kostecki learned about Debtor and RSWC through RSWC's website.  There, Debtor used the NASCAR trademark, stating that he was a Top NASCAR Talent Scout and operated an annual NASCAR Talent Search Shootout.  The website also contained photographs of NASCAR Team Drivers.  Debtor further represented that RSWC had received a $210,000 cash sponsorship from K&N Filters (K&N)[2] in 2011.

Kostecki, an Australian citizen living in Australia at the time, met with Debtor, who allegedly told Kostecki that he would send emails to NASCAR sanctioned Sprint Cup Teams to discuss where to place Brodie.  Kostecki eventually enrolled Brodie in the program and they moved from Australia to Roseville, California.  Kostecki sought and received a sponsorship for Brodie's racing from Alloy Steel.[3]

---

[2] K&N Filters is sometimes interchangeably referred to in the record as K&N Engineering.

[3] Kostecki apparently was an employee of Alloy Steel.

-3-

A dispute subsequently arose between the parties and Debtor pertaining to Debtor's and RSWC's affiliation or association with NASCAR. Thereafter, Debtor terminated Kostecki's son from the program. Sometime in 2011, Plaintiffs filed a state court lawsuit against Debtor and RSWC alleging, among other things, that Debtor misrepresented in advertising and other promotional materials that he and RSWC had an affiliation or association with NASCAR and had obtained a $210,000 cash sponsorship from K&N.[4]

**B.    Bankruptcy Events**

Debtor filed his chapter 7 petition on August 27, 2012. In Schedule F, he listed Plaintiffs as creditors with unsecured claims arising out of a 2011 state court lawsuit against Debtor and RSWC in an unknown amount.

On October 1, 2012, Plaintiffs filed this adversary proceeding against Debtor seeking to have their unliquidated debts declared nondischargeable under § 523(a)(2)(A). Plaintiffs alleged, among other things, that Debtor had made misrepresentations about his affiliation and association with NASCAR and a $210,000 cash sponsorship obtained from K&N.

Debtor filed a motion for summary judgment (MSJ). Plaintiffs opposed and submitted six declarations in support of their opposition. Those declarations included Kostecki's and the declaration of Plaintiffs' attorney, Michael Thomas (Thomas).

---

[4] K&N Engineering is a manufacturer of washable performance air filters and air intake systems. K&N has a racing contingency program that affiliates with NASCAR and other similar entities.

-4-

Kostecki testified as to how he learned about RSWC and that he enrolled his son in the RSWC program based on the representations on RSWC's website and from Debtor that his driver development program was affiliated with NASCAR and that he had obtained a $210,000 cash sponsorship from K&N. Attached to Kostecki's declaration was an email from Debtor about Brodie's selection to participate in the 2010 NASCAR Talent Search Shootout and a follow-up email stating that Brodie was a finalist for a spot in the NASCAR focused driver career development program. Attached to the follow-up email were full season budgets that Debtor had prepared. There, Debtor stated that he had worked out two full season race plans, with costs, and worked in $10,000 of K&N sponsorship funds. Also attached to Kostecki's declaration was a flyer for the NASCAR Racing Career Development Program which stated that the program included, among other things, connections to NASCAR Cup Teams.

Attached to Thomas' declaration were relevant portions of Debtor's and Kostecki's deposition transcripts and various exhibits. Also attached was the deposition of Anthony Yorkman, who was an employee and Sports Marketing Director of K&N Engineering. Yorkman testified, among other things, that K&N did not award $210,000 in sponsorships to selected drivers in connection with the 2010 Talent Search Shootout and gave no more than $9,246.60 in products to Debtor in 2011.

Also included in opposition to the MSJ was the declaration of Jason Houghtaling, an employee of RSWC. Houghtaling declared that Debtor had discussed the status of the litigation between him and Kostecki, and that at one point in 2011, Debtor had him

-5-

and other employees cover up or remove any and all references to NASCAR. He further declared that although Debtor and RSWC advertised as a NASCAR Driver Development Program and as a Top NASCAR Talent Scout, he was not aware of any driver enrolled in Debtor's program ever having been placed on a NASCAR professional team.

In addition, Plaintiffs included the declarations of Danny Cristiani and Michael Thompson, both of whom had enrolled their sons in Debtor's program based on their belief that Debtor and RSWC were affiliated with NASCAR. Eventually, both fathers withdrew their sons from the program.

Finally, Plaintiffs submitted the declaration of Rosalie Nestore, a paralegal in the legal department of NASCAR. Attached to her declaration was a letter dated April 27, 2011, sent by NASCAR to Debtor and RSWC telling them to stop using NASCAR's intellectual property rights. In response, Debtor sought guidance from NASCAR seeking approval to use the phrase "NASCAR **focused** Driver Career Development Program" in their advertising material. (Emphasis added.) In a May 6, 2011, letter to Debtor, NASCAR requested that Debtor cease and desist its use of the NASCAR trademark as part of its advertising.

The bankruptcy court denied Debtor's MSJ, finding that material facts were in dispute.

On May 13, 2013, the bankruptcy court scheduled a trial to commence on September 25-26, 2013, before Judge David R. Russell.

On August 21, 2013, the bankruptcy court issued an Order Setting Trial, which stated that the proceeding was governed by

LBR 9017-1.  Under that rule, Plaintiffs were required to submit their ADT declarations and related exhibits fourteen days before trial.[5]

On August 30, 2013, Plaintiffs filed a motion seeking a continuance of the trial because Kostecki's father had been diagnosed with cancer (Continuance Motion).  A few days later, Plaintiffs filed a motion seeking to shorten time for a hearing on the Continuance Motion.  The bankruptcy court issued an order shortening time, and the hearing on the Continuance Motion, originally scheduled for October 7, 2013, was scheduled for

---

[5] LBR 9017-1 provides in relevant part:

(a)(1) Purpose.  The purpose of this procedure is to streamline the adducement of direct testimony in trials and contested matters requiring an evidentiary hearing, so as to reduce trial time without sacrificing due process and a fair trial.  This procedure shall be known as the Alternate Direct Testimony Procedure.

(2) Applicability.  If ordered by the Court, the Alternate Direct Testimony Procedure shall be used in a trial or contested matter requiring an evidentiary hearing. . . .

. . .

(b) Submission of Alternate Direct Testimony Declarations, Exhibits, and Objections.  Unless otherwise ordered by the Court, copies of all alternate direct testimony declarations by witnesses and exhibits that are intended to be presented at trial or hearing shall be furnished to opposing counsel as follows:

(1) Plaintiff's Declarations and Exhibits.  The plaintiff shall submit to opposing counsel all such declarations and exhibits comprising the plaintiff's case in chief fourteen (14) days before trial.

-7-

September 16, 2013. Based on the September 25th trial date, under LBR 9017-1, Plaintiffs were to provide all ADT declarations and trial exhibits to Debtor's counsel by September 11, 2013, which they did not do. The bankruptcy court granted Plaintiffs' Continuance Motion on September 16, 2013.

On November 21, 2013, the bankruptcy court scheduled a new trial date for March 10-11, 2014, before Judge Russell.

On December 18, 2013, the bankruptcy court issued its formal order scheduling the trial date for March 10-11, 2014, which again stated that LBR 9017-1 applied to the proceeding. Plaintiffs were thus required to submit all ADT declarations and trial exhibits no later than February 24, 2014 (i.e., 14 days before trial). They failed to do so. Debtor timely filed his ADT declarations and exhibits.

On February 25 and 26, 2014, Plaintiffs and Debtor submitted deposition testimony each respective side intended to use at trial under the parties' Stipulation and Order for Use of Deposition Transcripts in Lieu of Live Testimony.

Plaintiffs complied with LBR 9017-1 - albeit late - by submitting the ADT declarations and exhibits they intended to use in their case to Debtor's counsel on March 3, 2014 - seven days before trial.

On March 3, 2014, Debtor filed the MIL seeking to strike any ADT declarations and exhibits that Plaintiffs intended to use at trial as a sanction for failing to obey the bankruptcy court's scheduling order and LBR 9017-1. To support his motion, Debtor cited numerous cases that stand for the proposition that courts have discretion to strike untimely filings. Debtor also

-8-

maintained that the late-filed declarations prejudiced his case because he was not afforded adequate time to determine which witnesses to subject to cross-examination and prepare for that cross-examination. Debtor further requested that the court reject Plaintiffs' request to submit the substance of any proposed declaration via live witnesses.

Plaintiffs opposed, asserting that they failed to comply with LBR 9017-1 because they had difficulty obtaining the signed declarations from the declarants for various reasons. Plaintiffs' excuse for not submitting the timely declaration of Kostecki was that he lived in North Carolina and was traveling in his capacity as Vice-President for Alloy Steel, such that it was difficult to track him down and get documents to him for review and signature. As for Mr. Thompson, Plaintiffs maintained that he lived in the Bay Area and due to his work schedule, there was a delay in getting his signature. Finally, as to Mr. Cristiani, Plaintiffs stated that he lived in Ukiah, California, and had recently acquired a new email address which caused a delay in getting his declaration to him and the signed declaration back.

Plaintiffs also argued that there was no prejudice to Debtor or surprise since the ADT declarations were substantially the same as those filed in opposition to Debtor's MSJ. Plaintiffs further asserted that all of the exhibits submitted were either previously produced by Debtor or by third parties at depositions.

The MIL was set to be heard on March 10, 2014, the day of the trial.

On March 10, 2014, the bankruptcy court commenced the trial by first hearing Debtor's MIL. After concluding that Plaintiffs' failure to comply with LBR 9017 caused extreme prejudice to Debtor in his trial preparation, the court granted the motion. As a result, Plaintiffs could not use the ADT declarations or exhibits at trial to show that Debtor had made misrepresentations to Kostecki about his race car driver development program and affiliation with NASCAR or that Debtor had never received a $210,000 cash sponsorship from K&N.

After granting the MIL, the bankruptcy court invited Plaintiffs' counsel to proceed with the trial. Counsel responded by saying that he had nothing to proceed with. The bankruptcy court stated: "So if you do not wish to proceed then I will grant judgment for the defendant."

The bankruptcy court entered the order granting Debtor's MIL on March 20, 2014. Plaintiffs filed a notice of appeal from the order on March 31, 2014.

The bankruptcy court issued a judgment in Debtor's favor on March 20, 2014, which stated: "Findings of fact and/or conclusions of law having been stated orally on the record and good cause appearing, IT IS ORDERED that the judgment is for the defendant."

The bankruptcy court issued an amended judgment on November 12, 2014, which states: "IT IS ORDERED, that Judgment for the Debtor Defendant against both Plaintiffs Andrew Kostecki and Allow[sic] Steel North America, Inc. for failure to present evidence or examine the Debtor[s]."

-10-

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  The order granting Debtor's MIL was an interlocutory order that merged into the final judgment. United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal., 545 F.3d 1134, 1141 (9th Cir. 2008) (under the merger rule interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal). Therefore, we have jurisdiction over both the order denying the MIL and the amended judgment under 28 U.S.C. § 158.

## III.  ISSUES

Was the bankruptcy court's decision to strike the ADT declarations and exhibits akin to a sanction?

If the bankruptcy court's decision was akin to a sanction, what authority did the bankruptcy court rely upon to exercise its discretion and issue the sanction?

Did the bankruptcy court abuse its discretion by striking the late-filed ADT declarations and exhibits?

## IV.  STANDARDS OF REVIEW

The standard of review for the bankruptcy court's exclusion of evidence is the same under the court's inherent powers, the Local Rules of Court, and the Civil Rules.  We first engage in de novo review of the legal issue of whether the bankruptcy court possessed the power to exclude Plaintiffs' evidence.  If the power existed, the bankruptcy court's exercise of that power will only be reversed for an abuse of discretion. Halaco Eng'g Co. v. Costle, 843 F.2d 376, 379 (9th Cir. 1988).  "Where the drastic sanctions of dismissal or default are imposed, however,

-11-

the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1337 (9th Cir. 1985).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

Underlying findings of fact are reviewed for clear error. Halaco Eng'g Co., 843 F.2d at 379.

We must inquire de novo whether judgment was properly entered in favor of Debtor once Plaintiffs' ADT declarations and exhibits had been excluded. Fireman's Fund Ins. Cos. v. Grover (In re Woodson Co.), 813 F.2d 266, 270 (9th Cir. 1987) (bankruptcy court's conclusions of law are reviewed de novo).

## V. DISCUSSION

The underlying basis of this appeal appears to be the considerable effect the bankruptcy court's ruling had on Plaintiffs' case. Plaintiffs characterize the court's ruling as a case-terminating sanction akin to dismissal, while Debtor contends that the ruling was merely an evidentiary ruling which did not amount to the dismissal of Plaintiffs' case as there was other evidence that they could have used to prove their case. Therefore, Debtor asserts that the case law cited by Plaintiffs

that addresses the standards for imposing case-terminating sanctions under the Civil Rules is inapplicable. However, according to Debtor, even if those standards apply, they have been met in this case.

Under similar facts, the district court in In re Reimers concluded that the bankruptcy court's granting of a motion in limine which resulted in the exclusion of declarations at trial was tantamount to a sanction. 2013 WL 9994337 (C.D. Cal. Feb. 12, 2013). We agree with the reasoning set forth in Reimers and adopt its analysis and conclusion for purposes of this threshold issue. Similar to the Reimers court, in our view, the bankruptcy court's ruling here was "tantamount to a sanction." Id. at *1. The MIL sought to strike Plaintiffs' ADT declarations and exhibits because they were untimely filed in violation of LBR 9017-1.[6] Such an exclusion is analogous to sanctions under Civil Rule 37(c)(1). As explained in Reimers:

> Under Rule 37(c)(1), a party who fails to disclose discovery materials may not use those materials as evidence at trial. The Ninth Circuit has repeatedly referred to this consequence as a sanction. See, e.g., Hoffman v. Constr. Protective Services, Inc., 541 F.3d 1175, 1180 (9th Cir. 2008) (referring to Rule 37(c)(1) as "a self-executing, automatic sanction ..."); see also R & R Sails, Inc. v. Ins. Co. of Pennsylvania, 673 F.3d 1240, 1247 (9th Cir. 2012) (noting that "evidence preclusion is, or at least can be, a harsh sanction," and finding that because the evidentiary sanction "dealt a fatal blow" to the claim, "in practical terms, the sanction amounted to

[6] Generally, the proper purpose of an in limine motion is not to accuse opposing counsel of engaging in sanctionable conduct, but "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996).

-13-

dismissal of a claim."). And, as happened in this case, exclusion under Rule 37 of undisclosed materials is generally sought via a motion in limine. See Hoffman, 541 F.3d at 1180 (Rule 37(c)(1) exclusion sanction requested in a motion in limine). Thus, that Appellees here sought exclusion through a motion in limine does not mean that the result was a mere evidentiary ruling as opposed to a sanction. Ninth Circuit case law clearly treats such rulings as sanctions.

2013 WL 9994337, at *2-3.

In addition, like Reimers, we conclude that the bankruptcy court's ruling amounted to the dismissal of Plaintiffs' fraud claims based upon their failure to comply with the local rule. See Thompson v. Hous. Auth. of City of L.A., 782 F.2d 829, 831 (9th Cir. 1986) (describing court's inherent authority to issue sanctions for non-compliance with procedures and orders).

Without the excluded evidence, it would be extremely difficult, if not impossible, for Plaintiffs to prove their case. To establish nondischargeability as a result of fraud under § 523(a)(2)(A), courts in the Ninth Circuit employ the following five-part test: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1246 (9th Cir. 2001).

Here, the record shows that the underlying issues were complex because there were multiple alleged misrepresentations made by Debtor orally and in RSWC promotional materials.

-14-

Further, the intent to deceive is a factual question and largely depends upon the credibility of witnesses and the weight to be given to their testimony. See generally Lazaron v. Lucas (In re Lucas), 386 B.R. 332 (Bankr. D.N.M. 2008) ("Rarely is it appropriate to grant summary judgment on a claim for nondischargeability based on 11 U.S.C. § 523(a)(2)(A) because intent to defraud often depends on the credibility of witnesses."). It was the bankruptcy court's role to make the necessary credibility determinations. However, because the bankruptcy court excluded Plaintiffs' late-filed declarations and exhibits, they had no opportunity to establish their credibility in either the first instance or through cross-examination.

We also give little credence to Debtor's suggestion that Plaintiffs could have sought leave of court to put on live testimony. Debtor specifically requested in the MIL that the bankruptcy court deny any request from Plaintiffs to present live testimony and the bankruptcy court's comments in its ruling essentially foreclosed that possibility.

In any event, even if the exclusion of evidence in this case does not amount to a case-terminating sanction, preclusion of evidence is a "drastic measure." Taylor v. Illinois, 484 U.S. 400, 417 n.23 (1988); see also R & R Sails, Inc., 673 F.3d at 1247 (noting that "evidence preclusion is, or at least can be, a harsh sanction"). Accordingly, we next consider the underlying authority for the bankruptcy court's action de novo and whether its imposition of sanctions under that authority was an abuse of discretion. Halaco, 843 F.2d at 379;

-15-

see also Zambrano v. City of Tustin, 885 F.2d 1473, 1476 (9th Cir. 1989) ("In determining the validity of any judicial sanction, we must first consider the underlying authority for the court's action."). "'For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on.'" Cunningham v. Cnty. of L.A., 879 F.2d 481, 490 (9th Cir. 1988); United States v. Stoneberger, 805 F.2d 1391, 1392 (9th Cir. 1986).

The bankruptcy court's power to sanction derives from several sources: its inherent power, Local Rules of Court, and Federal statute. Here, we can only speculate as to what authority the bankruptcy court relied upon since the authority was neither briefed in the MIL nor mentioned in the court's ruling. Ultimately we conclude that regardless of the authority relied upon, the bankruptcy court's decision to exclude Plaintiffs' late-filed declarations and exhibits at trial was an abuse of discretion.

**Inherent Powers**. A bankruptcy court's inherent powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). In appropriate cases, a court may select from the menu of sanctions available under its inherent powers the draconian sanction of dismissal to "the 'less severe sanction' of an assessment of attorney's fees," Chambers, 501 U.S. at 44-45, to an intermediate sanction of the exclusion of some evidence or testimony, see Dillon v. Nissan Motor Co., 986 F.2d 263, 266-69 (8th Cir. 1993).

-16-

Because "inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express Inc. v. Peper, 447 U.S. 752, 764 (1980). There, the Supreme Court stated:

> Similarly, the trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers.

Id. at 764. To insure that restraint is properly exercised, the Ninth Circuit has routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power. For example, in Stoneberger the district court imposed sanctions on a chronically late attorney. Reversing the imposition of sanctions, the Ninth Circuit held that mere tardiness does not demonstrate the improper purpose or intent required for inherent power sanctions. 805 F.2d at 1393. Rather, "[a] specific finding of bad faith . . . must 'precede any sanction under the court's inherent powers.'" Id. (quoting Roadway, 447 U.S. at 767). The Ninth Circuit again reversed sanctions due to a lack of intent in Zambrano, 885 F.2d 1473. There, the plaintiff's counsel negligently failed to comply with local court rules that required admission to the district court bar. The Ninth Circuit vacated the sanctions, holding that the district court may not sanction mere "inadvertent" conduct. Id. at 1485; see also id. at 1483 ("Nothing in the record indicates that their failure to request admission to the district bar was anything more than an oversight or ordinary negligence on their part."); id. at 1484 ("Willful or reckless disregard of court rules justifies punitive action."). Similarly, in Yagman v.

-17-

Republic Insurance, 987 F.2d 622, 628 (9th Cir. 1993), the Ninth Circuit vacated the imposition of sanctions where there was no evidence that the attorney had "acted in bad faith or intended to mislead the court."

Accordingly, to the extent the bankruptcy court's decision to exclude Plaintiffs' late-filed declarations and exhibits was based on its inherent powers, we must reverse. The record does not show that Debtor satisfied the high burden necessary for the preclusion of evidence under the bankruptcy court's inherent power, and there is no finding of bad faith.

**Local Rules**. Although a bankruptcy court may sanction an attorney for violating local rules, Miranda v. S. Pac. Transp. Co., 710 F.2d 516, 519 (9th Cir. 1983), the Ninth Circuit has required sanctions under local rules to meet strict criteria. Zambrano, 885 F.2d at 1477. In addition to being consistent with the Federal rules, other statutes, and principles of "right and justice," the sanctions order must be

> **necessary** for the court to 'carry out the conduct of its business.' There must be a **close connection** between the sanctionable conduct and the need to preserve the integrity of the court docket or the sanctity of the federal rules. Finally, any sanction imposed must be **proportionate to the offense** and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes **a responsibility to consider the usefulness of more moderate penalties** before imposing a monetary sanction.

Id. at 1480 (emphasis added). Finally, there must be a finding of recklessness, repeated disregard of court rules, gross negligence, or willful misconduct. Id.; see also Wehrli v. Pagliotti, 1991 WL 143815, at *2 (9th Cir. Aug. 1, 1991) ("The district court's authority to impose sanctions for violation of

-18-

local rules should be reserved for 'serious breaches,' not thoughtless conduct."); <u>In re Colville Confederated Tribes</u>, 980 F.2d 736 (9th Cir. 1992) (Table) (noting that sanctions for violation of local rules are subject to the limits upon the court's inherent power and statutory authority, and that "[t]hese limits require at a minimum that the sanctions order be supported with an explicit finding of an attorney's bad faith, and that the misconduct amount to more than a negligent transgression of the local rules.").

Although it is undisputed that Plaintiffs violated LBR 9017-1 by filing their ADT declarations and exhibits late, the rule itself does not expressly authorize the imposition of sanctions. In fact, it does not give warning of the possible consequence if the rules are not strictly followed. We look instead to LBR 1001-1(g) which authorizes the bankruptcy court to impose sanctions for noncompliance with the local rules:

> Failure of counsel or of a party to comply with these Rules, with the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure, or with any order of the Court may be grounds for imposition of any and all sanctions authorized by statute or rule or within the inherent power of the Court, including, without limitation, dismissal of any action, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions.

This rule gives fair warning to an attorney or party that a violation of the local rules will subject him or her to a variety of sanctions, including dismissal of any action and "other lesser sanctions."

However, contrary to the strict requirements set forth in <u>Zambrano</u>, the record does not indicate that the bankruptcy court

considered a more moderate penalty before imposing what was essentially a case-terminating sanction. For example, the court could have granted a continuance to allow Debtor's attorney more time to prepare and impose a monetary sanction to compensate Debtor's attorney for the wasted appearance. A continuance is the preferred sanction. See United States v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002) ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."). Here, the bankruptcy court discussed no alternatives.

The bankruptcy court also did not explicitly find that Plaintiffs' late filing was reckless or willful, or involved repeated disregard of court rules or gross negligence. Although Debtor complains that Plaintiffs did not comply with LBR 9017-1 in connection with the first trial date, their failure to do so does not demonstrate repeated disregard of court rules when their Continuance Motion was pending prior to the time their declarations were due. There is also nothing in the record that shows Plaintiffs' conduct was reckless or willful. While their conduct shows a lack of diligence, that does not make it sanctionable under Ninth Circuit case law cited above.

Accordingly, to the extent the bankruptcy court's decision to exclude Plaintiffs' late-filed declarations and exhibits was based on its sanction power under LBR 1001-1(g), we must reverse; the requirements under Zambrano were not met.

**Civil Rules.** Although the bankruptcy court's decision to exclude the late-filed declarations and exhibits is analogous to Civil Rule 37(c)(1), that rule is inapplicable by its very

-20-

terms.  Civil Rule 37(c)(1) provides:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Civil Rule 37 does not appear implicated in this case because there was no discovery or disclosure violation.

Generally, the Ninth Circuit has limited application of Civil Rule 37 to its literal scope.  Halaco, 843 F.2d at 380 n.1.  Since there was no discovery-related misconduct, Plaintiffs' conduct does not fall within the literal language of Civil Rule 37(c)(1), or for that matter any other part of the rule.  The bankruptcy court thus did not possess the power to exclude Plaintiffs' late-filed declarations and exhibits as a sanction under Civil Rule 37.

Even if the Civil Rule was applicable, under Ninth Circuit law, the court must weigh five factors in determining whether it is appropriate to exclude evidence as a sanction: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  Thompson, 782 F.2d at 831; Malone v.

-21-

<u>U.S. Postal Serv.</u>, 833 F.2d 128, 130 (9th Cir. 1987).  And, where a sanction amounts to a case-terminating sanction, the court must also consider whether the noncompliance involved willfulness, fault, or bad faith.  <u>See</u> <u>R & R Sails, Inc.</u>, 673 F.3d at 1247 ("sanction amounted to dismissal of a claim, [so] the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, . . . and also to consider the availability of lesser sanction"); <u>Fjelstad</u>, 762 F.2d at 1337.  If the bankruptcy court fails to make explicit findings for each of these factors, the appellate court must review the record independently to determine whether the dismissal was an abuse of discretion. <u>Malone</u>, 833 F.2d at 130.

Here, Debtor argues that even if the court were obligated to apply these factors, the record amply supports the conclusion that the bankruptcy court did not abuse its discretion by excluding Plaintiffs' evidence.  Without matching up the factors to his argument, Debtor maintains that (1) the court found "extreme prejudice" (factor three); (2) the court found that Plaintiffs' failure to comply with LBR 9017-1 disrupted the proceedings (factor two); and (3) there was no need for the court to unilaterally consider continuing the trial in order to cure Plaintiffs' failure to comply with LBR 9017-1 under these circumstances (factor five?).  Debtor also argues that it was Plaintiffs' own fault for failing to timely submit the declarations and exhibits, as their explanation for the delay does not show circumstances beyond their control.  Therefore, according to Debtor, the requirement for a finding of

-22-

willfulness, bad faith, or **fault**, under R & R Sails has been met.

First, even if we were to conclude that the bankruptcy court implicitly found some factors that would support its ruling, it is not evident from the record that other factors were considered. The court did not take into account whether less drastic sanctions could remedy the harm caused to Debtor's ability to respond to and defend against Plaintiffs' fraud claims. Nor is there any indication in the record that the court considered the strong public policy favoring disposition of cases on their merits. There was no egregious conduct in this case that would override that policy. It is thus not apparent from the record before us that a proper weighing of the factors would necessarily result in the sanction of dismissal.

Second, as noted above, the bankruptcy court made no findings of willfulness, bad faith, or fault. We are not persuaded that the fault at issue here — really more like negligence or oversight — can support the "drastic measure" of excluding Plaintiffs' evidence. As noted before, while Plaintiffs' conduct shows a lack of diligence and could be construed as negligence, mere negligence without more is an insufficient ground for imposing case-terminating sanctions. See Zambrano, 885 F.2d at 1480 ("Thus, while we believe that Congress authorized the federal courts to wield reasonable authority over attorneys appearing before them, we do not think that the imposition of financial sanctions for mere negligent violations of the local rules is consistent with the intent of Congress or with the restraint required of the federal courts in

-23-

sanction cases.").

Finally, "[t]o support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to prepare or present its case." Golyansky, 291 F.3d at 1250. Although Debtor complained that the delay impacted his ability to determine which witnesses to cross-examine and prepare for that cross-examination, these complaints do not add up to extreme prejudice. Granted, we do not have the late-filed declarations before us in the record. However, Plaintiffs' counsel made an offer of proof before the bankruptcy court and on appeal that the ADT declarations were substantially similar in substance to Plaintiffs' summary judgment declarations. Therefore, we have good reason to believe that months prior to the trial, Debtor had a good understanding as to what the ADT testimony was regarding the various misrepresentations. Plus, Debtor had the ADT declarations and exhibits a full seven days before trial was to commence. In short, although the declarations in connection with the summary judgment were in a different format and submitted for a different purpose, there is nothing specific in the record from Debtor that suggests there was any real surprise in the content of the late-filed declarations.

Accordingly, while there may have been some prejudice to Debtor, the record does not support the bankruptcy court's finding of "extreme prejudice." Assuming that there was some prejudice to Debtor, a short continuance of the trial could have remedied the prejudice that concerned Debtor.

In sum, it appears that a lack of diligence on the part of

Plaintiffs or their counsel may have disrupted the court's docket. Such conduct makes some sanction a realistic possibility. However, to the extent the bankruptcy court had authority to impose the sanction under its inherent powers, the Local Court Rules, or the Civil Rules, the bankruptcy court abused its discretion by granting the MIL and excluding the evidence for the reasons discussed above. Therefore, we must find the bankruptcy court erred in entering judgment in favor of Debtor.

## VI. CONCLUSION

For the reasons stated, we REVERSE the bankruptcy court's order granting Debtor's MIL, VACATE the judgment and REMAND this matter to the bankruptcy court for further proceedings not inconsistent with this memorandum disposition.